UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Case No. 05_____

_____

DIANA R. MEYERS

Plaintiff,

v.

HERBERT K. SUDFELD, JR., ESQ.; FOX, ROTHCHILD, LLP; POWER, BOWEN, and VALIMONT, LLP; EDWIN C. ANGSTADT, JR., ESQ.; EASTBURN and GRAY, P.C.; JOHN KATSOCK, C.P.A.; and J.J. KATSOCK and COMPANY;

Defendants.

_____

**COMPLAINT**
_____

COMES NOW, Plaintiff, Diana R. Meyers ("Ms. Meyers"), by and through her legal counsel, Ralph A. Cantafio, Esq., of the Law Offices of Ralph A. Cantafio, P.C., who complains of Defendants as follows:

**GENERAL ALLEGATIONS PERTAINING TO MS. MEYERS**

1.   Ms. Meyers is a widowed senior citizen whose place of residence is Steamboat Springs, Routt County, Colorado.

2.   Ms. Meyers pursues civilian activities and is not a member of the armed forces of the United States or its allies.

**GENERAL ALLEGATIONS PERTAINING TO DEFENDANT SUDFELD, DEFENDANT FOX ROTHCHILD, AND DEFENDANT POWER, BOWEN AND VALIMONT**

3.   Defendant Herbert K. Sudfeld, Jr., Esq. ("Attorney Sudfeld") is an individual duly licensed to

1

practice law in the Commonwealth of Pennsylvania where he possesses attorney registration number 24691.

4.    Upon information and belief, Attorney Sudfeld is currently a partner at the law firm of Fox, Rothchild, LLP, located at 2700 Kelly Road, Suite 300, Warrington, Pennsylvania.

5.    Upon information and belief, Attorney Sudfeld was previously a partner of the law firm of Power, Bowen and Valimont, LLP, which was located in Doylestown, Pennsylvania.

6.    Attorney Sudfeld is an attorney in good standing with the Bar of the Commonwealth of Pennsylvania.

7.    Fox Rothchild and Power, Bowen and Valimont are each vicariously liable for the acts, errors and omissions of Attorney Sudfeld as alleged herein.

8.    Upon information and belief, Attorney Sudfeld pursues civilian activities and is not a member of the armed forces of the United States or its allies.

**GENERAL ALLEGATIONS PERTAINING TO**
**DEFENDANT ANGSTADT AND DEFENDANT EASTBURN AND GRAY, P.C.**

9.    Defendant Edwin C. Angstadt, Jr., Esq. ("Attorney Angstadt"), is also an individual duly licensed to practice law in the Commonwealth of Pennsylvania, where he possesses attorney registration number 9860.

2

10. Upon information and belief, Attorney Angstadt is now retired from the practice of law. Attorney Angstadt was an attorney in good standing at the time he is alleged to have provided legal services to Ms. Meyers as set forth in this Complaint, but is currently on inactive status.

11. Prior to his retirement and at all times set forth herein, Attorney Angstadt practiced with the law offices of Eastburn and Gray, P.C., located at 60 E. Court Street, Doylestown, Pennsylvania.

12. Defendant Eastburn and Gray, P.C. is vicariously liable for the acts, errors and omissions of Attorney Angstadt as alleged herein.

13. Upon information and belief, Attorney Angstadt pursues civilian activities and is not a member of the armed forces of the United States or its allies.

**GENERAL ALLEGATIONS PERTAINING TO
DEFENDANT KATSOCK AND DEFENDANT J.J. KATSOCK AND CO.**

14. Defendant, John Katsock, C.P.A. ("C.P.A. Katsock") is an individual who practices accounting in the Commonwealth of Pennsylvania, where he is recognized as a Certified Public Accountant.

15. Upon information and belief, C.P.A. Katsock is the sole shareholder of J.J. Katsock and Company, where he is also a director and officer.

3

16. At all times set forth herein, C.P.A. Katsock
    practiced accounting with J.J. Katsock and Company
    with offices located in Morrisville, Pennsylvania.

17. J.J. Katsock and Company is vicariously liable for
    the acts, errors and omissions of C.P.A. Katsock
    as alleged herein.

18. Upon information and belief, C.P.A. Katsock
    pursues civilian activities and is not a member of
    the armed forces of the United States or its
    allies.

**JURISDICTION**

19. Jurisdiction is proper in the United States
    District Court for the Eastern District of
    Pennsylvania pursuant to the diversity provisions
    of 28 U.S.C. §1332.

20. The damages sought by Ms. Meyers well exceed the
    sum of Seventy-five Thousand Dollars ($75,000.00),
    an amount exclusive of interest, costs and
    attorneys fees.

**VENUE**

21. Venue is proper in the United States District
    Court for the Eastern District of Pennsylvania
    pursuant to 28 U.S.C. §1391 as the causes of
    action complained of, as well as a substantial
    part of the events or omissions giving rise to the

4

claim, occurred in the Eastern District of Pennsylvania.

**GENERAL ALLEGATIONS AS TO MR. AND MS. MEYERS**

22.  Ms. Meyers was married to Francis John Meyers ("Mr. Meyers") of New Hope, Pennsylvania in Pitkin County, Colorado, on January 16, 1968.  (Exhibit A)

23.  Mr. Meyers was at the time of this marriage and until his death a businessman.

24.  Among the varied business interests of Mr. Meyers included those in a restaurant located in New Hope, Pennsylvania known as the Canal House.

25.  The real property upon which the Canal House was operated was utilized not only for a restaurant and lounge, but included apartment units, as well as commercial rental space.  The totality of this enterprise shall be referred to hereinafter in the singular as the "Canal House."

26.  During the course of their marriage, Mr. Meyers acted as a traditional "breadwinner" and was responsible for all significant financial decisions and the business affairs of this couple. These business ventures included the operation of the Canal House.

27. Ms. Meyers, who was 20 years the junior of Mr. Meyers, possesses only a high school degree and has attended one year of college.

28. At the time she wedded Mr. Meyers, Ms. Meyers was employed as a cocktail waitress and hostess at the Canal House.

29. After her marriage to Mr. Meyers, Ms. Meyers had no significant financial responsibilities for the operation of the Canal House, nor was she in any fashion responsible for financial decisions in any of the other business affairs of Mr. Meyers.  It is conceded that Ms. Meyers continued to be employed at the Canal House as, among other things, a hostess and bartender until the death of her husband.

### THE PASSING AWAY OF MR. MEYERS

30. In the Spring of 1998, Mr. Meyers entered the terminal phase of his bout with cancer.  He had fought against this cancer since approximately 1993 and for some 5 years thereafter until he passed away on June 9, 1998.  (Exhibit B)

31. At the time Mr. Meyers passed away, Mr. Meyers had been married to Ms. Meyers for a bit more than 30 years.

32. Prior to his death, Mr. Meyers was reunited with his previously estranged biological granddaughter, Karen Torina ("Ms. Torina").

33. Ms. Torina was related by blood to Mr. Meyers as a grand daughter from a previous marriage.  The parent of Ms. Torina was a child the first wife of Mr. Meyers and Mr. Meyers.

### THE LEGAL RELATIONSHIPS BETWEEN MR. MEYERS AND OMNIBUS LEGAL COUNSEL

34. Traditionally, Mr. Meyers, personally and on behalf of the Canal House, had utilized the legal services of Herbert K. Sudfeld, Jr., Esq., then of Power, Bowen and Valimont, LLP.  Attorney Sudfeld was known to Ms. Meyers as the Meyers family attorney.

35. At a time after learning that Mr. Meyers was entering the terminal phase of cancer, Mr. Meyers, Ms. Meyers and Attorney Sudfeld met personally. At that meeting Mr. Meyers, knowing that he was close to death and that his wife was not sophisticated in business affairs, represented to Ms. Meyers that Attorney Sudfeld would always "look after" Ms. Meyers subsequent to the time of Mr. Meyers inevitable death.  Attorney Sudfeld personally agreed and replied to Mr. Meyers that he would always "look after" Ms. Meyers.

7

36. Immediately prior to his death on June 9, 1998, Mr. and Mrs. Meyers, at the insistence of Ms. Torina, visited with Edwin C. Angstadt, Jr., Esq. of Eastburn and Gray, P.C. for the purpose of drafting Wills and other documents of an estate planning nature for both Mr. Meyers and Ms. Meyers.  (Exhibits C and D)

37. At that time, Ms. Torina had a previous professional relationship with Attorney Angstadt and Eastburn and Gray, P.C.

38. After Mr. Meyers passed away, the Estate of Mr. Meyers was filed for probate with the Court of Common Pleas of Bucks County, Pennsylvania.

39. Ms. Meyers was named Executrix of that estate in the Last Will of her husband (Exhibit E).  Letters Testamentary were executed by Barbara G. Reilly, Register of Wills on June 17, 1999. (Exhibit F)

40. Eastburn and Gray, P.C. was retained as legal counsel to assist with the probating of the estate of Mr. Meyers.

41. During the course of probating Mr. Meyers' estate, representations were made by Attorney Angstadt to Ms. Meyers as to the value of certain real property and assets in which Mr. Meyers possessed a legal interest at and ultimately after the time of Mr. Meyers' death.

42. Ms. Meyers received by Executors Deed, among other things, two significant pieces of real property. These two real properties are referred to hereafter as the Canal House property and the Parking Lot property, each situate in New Hope, Pennsylvania. (Exhibit G)

### THE "ANNUITY TRANSACTION"

43. In late 1999, Ms. Meyers was diagnosed with uterine cancer. (Exhibit H)

44. By 1999, Ms. Meyers had relocated to Routt County, Colorado, where she continues to reside full time.

45. After this diagnosis of uterine cancer, a regiment of radiation and chemotherapy was entered into by Ms. Meyers.

46. As of today, Ms. Meyers is in complete remission.

47. At or about the time Ms. Meyers was being treated for her uterine cancer in 1999, Ms. Torina and her husband, Ciro, made an offer to purchase from Ms. Meyers not only her interest in the Canal House (i.e. the business and the real estate), but the Parking Lot property. The parties executed an Agreement of Sale dated December 31, 1999. (Exhibits I and J)

48. At that time, Ms. Torina and her husband, Ciro, had business interests in New Hope, Pennsylvania

including a bar and restaurant known as Fran's
Pub.

49. In contradistinction to Ms. Meyers, both Mr. and
Mrs. Torina were and are relatively sophisticated
as to business affairs.

50. In this transaction in which the Canal House
property and the Parking Lot property were to be
sold by Ms. Meyers to Karen and Ciro Torina, Mr.
and Mrs. Torina were represented by Attorney
Angstadt of Eastburn and Gray.  The interests of
Ms. Meyers as to this proposed transaction were
represented by Attorney Sudfeld of Fox, Rothchild.

51. There were never executed at that time or since
any documents in which Ms. Meyers waived any
conflict of interest as to the fact that her
previous legal counsel, Eastburn and Gray, were
now representing Mr. and Ms. Torina in this
transaction; nor was such ever discussed by
Attorney Sudfeld.

52. In 1999, Ms. Meyers was also introduced by Ms.
Torina to Ms. Torina's accountant, C.P.A. Katsock.

53. Ms. Meyers, at the behest and suggestion of Ms.
Torina, retained the accounting services of C.P.A.
Katsock and J.J. Katsock and Company.

54. Ms. Meyers thereafter relied upon accounting
advice provided to her by C.P.A. Katsock.

10

55. C.P.A. Katsock simultaneously provided accounting
    advice to Mr. and Mrs. Torina, as well as Ms.
    Meyers.

56. The Canal House property and the Parking Lot
    property were conveyed by Ms. Meyers to Mr. and
    Mrs. Torina.  This ultimate transaction in which
    Mr. and Ms. Torina received title to the Cana
    House property and the Parking Lot property was,
    however, unorthodox at best.

57. The structure of the transaction was conceived in
    part by C.P.A. Katsock.  Generally speaking, an
    "annuity" would be created by which Ms. Meyers
    would be paid $4,500.00 per month during the
    duration of her life in exchange for conveying the
    entirety of her interests in the Canal House and
    Parking Lot to Ciro and Karen Torina.

58. Ms. Meyers, as a consequence of the advice of
    Attorney Sudfeld and C.P.A. Katsock, on May 11,
    2000, conveyed both the Parking Lot property and
    the Canal House to Karen Torina and her husband,
    Ciro (the "annuity transaction").  (Exhibit K) In
    exchange for receiving title to the Parking Lot
    property and the Canal House property, a Mortgage
    (Exhibit L) securing a Promissory Note (Exhibit M)
    benefitting Ms. Meyers was duly recorded with the

Recorder of Deeds of Bucks County, Pennsylvania at Book 2056, Pages 0107 through 0147, inclusive.

59.   At no time did any representative of Eastburn and Gray, despite their previous legal representation of Ms. Meyers, require that Ms. Meyers execute any waiver of conflict documents permitting their legal representation of Karen and Ciro Torina in this "annuity transaction."

60.   At no time did Attorney Sudfeld or any representative of Fox Rothchild discuss with Ms. Meyers this conflict of interest involving Eastburn and Gray or seek the execution of a waiver of conflict of interest document as to Ms. Meyers and Eastburn and Gray.

61.   Approximately one year prior to his death, Mr. Meyers, on or bout June 20, 1997, had completed a personal financial statement dated June 30, 1997, and submitted to Premier Bank of Doylestown, Pennsylvania, setting forth that the Parking Lot property and the Canal House restaurant were worth 1.5 million dollars.  (Exhibit N)

62.   At the time Attorney Sudfeld represented Ms. Meyers pertaining to this "annuity transaction," Attorney Sudfeld failed to secure any appraisal of the real property being conveyed to Karen and Ciro Torina to determine its fair market value.  Nor

did Attorney Sudfeld secure any business appraisal to determine the value of the restaurant itself.

63. The real property conveyed to Karen and Ciro Torina in exchange for the annuity, without even considering the value of the Canal House restaurant, far exceeded the value being provided to Ms. Meyers as consideration in support of the "annuity transaction."

64. Ms. Meyers utilized the accounting advice of John Katsock, C.P.A. to provide to her accounting services and information as to this "annuity transaction."

65. During this period of time when C.P.A. Katsock was representing Ms. Meyers as to the "annuity transaction," C.P.A. Katsock simultaneously represented Mr. and Mrs. Torina, the Canal House, and, now, Ms. Meyers.

66. Ms. Meyers was never advised as to any conflict of interest pertaining to these multiple representations of C.P.A. Katsock.

67. Both C.P.A. Katsock and Attorney Sudfeld approved of Ms. Meyers participating in this "annuity transaction."

68. Not only did Ms. Meyers fail to receive anything close to adequate compensation for the conveyance of her interest in the Canal House property and

the Parking Lot property to Karen and Ciro Torina, but arguably Ms. Meyers unwittingly entered into a scheme designed and implemented by C.P.A. Katsock and Attorney Sudfeld that not only failed to provide to Ms. Meyers adequate compensation for the conveyance of these properties, but simultaneously defrauded the United States Department of the Treasury.  More specifically, Attorney Sudfeld and C.P.A. Katsock represented to Ms. Meyers that none of the monies received by Ms. Meyers as compensation for conveying these real properties would be subject to any taxation of any type or kind.

69. As with Attorney Sudfeld, C.P.A. Katsock also failed to ever suggest, let alone actually secure, any appraisal of either the Canal House property or Parking Lot property so as to provide to Ms. Meyers objective third party information to determine whether or not from an economic point of view the proposed conveyance of these real properties were in her financial best interests.

70. Like Attorney Sudfeld, C.P.A. Katsock also entirely failed to conduct any adequate legal research to determine whether or not the proposed "annuity" transaction was consistent with the Internal Revenue Code and other legal authority.

14

## MODIFICATION OF THE "ANNUITY TRANSACTION"

71. In the Spring of 2001, Mr. and Mrs. Torina were interested in modifying the "annuity" agreement. At that point in time, the original debt was amended and a new Promissory Note (Exhibit O) and Mortgage dated February 1, 2001 (Exhibit P) was executed and recorded with the Recorder of Deeds of Bucks County, Pennsylvania.

72. Although Attorney Sudfeld continued to provide legal counsel to Ms. Meyers pertaining to this "annuity transaction," it was Mr. and Mrs. Torina that were paying the legal fees of Attorney Sudfeld and Fox, Rothchild incurred by Ms. Meyers pertaining to modification of the "annuity transaction."  (Exhibit Q)

73. Attorney Sudfeld never secured any documentation advising Ms. Meyers of this inherent conflict of interest of having Karen and Ciro Torina pay for these legal fees involving the modification of this "annuity" agreement.

74. Attorney Sudfeld also acted negligently in that the revised Mortgage securing the "annuity" payment never in any fashion allocated any amount of debt to either the Canal House restaurant or the Parking Lot property.

15

75.  Throughout 2003, Attorney Sudfeld, never
     terminating his professional relationship with Ms.
     Meyers, provided legal counsel benefitting Karen
     and Ciro Torina.  This legal counsel of Attorney
     Sudfeld addressed a series of different entities
     in which Karen and Ciro Torina possessed an
     interest including another restaurant and bar
     establishment located in New Hope, Pennsylvania,
     known as Fran's Pub.  Attorney Sudfeld also
     provided legal counsel as to the Canal House.
     (Exhibit R)

76.  At no time has Attorney Sudfeld ever identified
     any conflict of interest as to the simultaneous
     legal representation of the interests of Karen and
     Ciro Torina and the independent interests of Ms.
     Meyers.

### TAX REPORTING OF C.P.A. KATSOCK

77.  C.P.A. Katsock, as well as J.J. Katsock and
     Company, for tax years 2002 (Exhibit S) and 2003
     (Exhibit S-1) prepared state and federal income
     tax returns for Ms. Meyers.

78.  These tax returns contained material
     misrepresentations pertaining to, among other
     things, the residence of Ms. Meyers.

79.  Despite the fact that Ms. Meyers had been a full
     time resident of the State of Colorado for years,

C.P.A. Katsock fraudulently filed Pennsylvania state income taxes designating Ms. Meyers as a Pennsylvania resident.

80. Further, C.P.A. Katsock improperly instructed Ms. Meyers that she had no duty to file any Colorado State income tax return.

81. The filing of these tax returns amount to tax fraud.

### SALE OF THE PARKING LOT PROPERTY

82. By the Fall of 2004, Karen and Ciro Torina decided to liquidate certain assets they either controlled or possessed located in New Hope, Pennsylvania.

83. This plan of liquidation included the sale of the Canal House property and Parking Lot property, upon which Ms. Meyers continued to hold a mortgage.

84. On or about August 22, 2004, Mr. and Mrs. Torina received a Standard Agreement for the Sale of Vacant Land (Exhibit T) so as to sell the Parking Lot property.

85. Attorney Sudfeld represented the interests of Ms. Meyers pertaining to this proposed sale of the Parking Lot property.

86. Attorney Sudfeld, despite representing the interests of Ms. Meyers, never secured a copy of the Standard Agreement for the Sale of Vacant Land

or any other document pertaining to this proposed sale.  Attorney Sudfeld contends that he never reviewed any documents concerning this transaction.

87. Attorney Sudfeld, unilaterally and without the consent of Ms. Meyers, thereafter agreed that from the sale of the Canal House property and the Parking Lot property Ms. Meyers would receive a total sum of $560,000.00.  (Exhibit U)

88. This $560,000.00 would be paid $150,000.00 at the time of the closing on the Parking Lot property, reducing the remaining balance to an amount due of $410,000.00.  This $410,000.00 would then be reduced by payments of $6,000.00 per month by Karen Torina to Ms. Meyers consistent with the February 2001 amendment to the "annuity" agreement.  The balance payable would be tendered to Ms. Meyers upon the sale of the Canal House property.

89. There exist no written documents confirming that this agreement was ever acceptable to Ms. Meyers. Ms. Meyers maintains such was not ever acceptable to her nor even proposed to her before being accepted unilaterally and without authority by Attorney Sudfeld.

90.   Ms. Meyers consistently refused to in any fashion
      to execute any document in furtherance of this
      transaction.

91.   Attorney Sudfeld affirmatively represented to
      Michael Sheridan, Esq. of Fox, Differ, Callahan,
      Sheridan and McDevitt, in Attorney Sudfeld's
      capacity as legal counsel for Mr. and Mrs. Torina
      that Attorney Sudfeld possessed authority to
      accept this $560,000.00 financial settlement
      aforementioned on behalf of Ms. Meyers.  Such
      representation by Attorney Sudfeld was untrue.

92.   Attorney Sudfeld also never attempted to secure
      nor actually secured any real estate appraisal so
      as to determine whether or not the agreed upon
      sales price of the Parking Lot property of
      $535,000.00 was fair or the proposed payment of
      $150,000.00 to Ms. Meyers appropriate.

93.   Attorney Sudfeld was also negligent in failing to
      make any determination as to the tax implications
      upon Ms. Meyers as a consequence of her receiving
      any lump sum payment whether $150,000.00 or
      otherwise in lieu of the previous "annuity"
      agreement.

94.   Attorney Sudfeld made no effort whatsoever to
      provide any justification as to how he determined
      that $150,000.00 would be paid to Ms. Meyers as a

consequence of the sale of the Parking Lot property.

95.   Attorney Sudfeld represented to third parties that he could secure Mortgage Satisfaction Pieces executed by Ms. Meyers releasing any interest of hers in the Parking Lot property.  After the real estate closing conveying the Parking Lot property, Ms. Meyers refused to execute any Mortgage Satisfaction documents. (Exhibit V)

### REQUEST FOR CLIENT FILES

96.   Written demand on behalf of Ms. Meyers has been made of Attorney Sudfeld and Fox, Rothchild, as well as Attorney Angstadt and Eastburn and Gray requesting that they provide any and all documents pertaining to, among other things, the "annuity" agreement, as well as documents involving the sale of the Parking Lot property.  (Exhibit W)

97.   Attorney Angstadt and his office have provided no documents whatsoever.

98.   Similar request for documents has been made upon C.P.A. Katsock and J.J. Katsock and Company. (Exhibit X)   Again, no such documents have been provided by these entities.

99.   While Attorney Sudfeld since the fall of 2004 has provided numerous documents pertaining to his legal representation of Ms. Meyers, he provides

virtually no documents whatsoever pertaining to the "annuity transaction" or the sale of the Parking Lot property.  Attorney Sudfeld and Fox Rothchild have provided numerous copies of documents already part of the public record duly recorded with the Recorder of Deeds of Bucks County and documents sent to Ms. Meyers.

100. Attorney Sudfeld and Fox Rothchild have provided absolutely no billing records pertaining to either the "annuity transaction" or the sale of the Parking Lot property transactions.

101. Under these circumstances, it is inconceivable that no billing files exist as to the "annuity transaction" or the sale of the Parking Lot property.

102. Ms. Meyers terminated her professional relationship with Attorney Sudfeld and Fox Rothchild in October, 2004.

**RULES OF PROFESSIONAL CONDUCT**

103. Rule of Professional Conduct 1.6, Confidentiality of Information, includes:

   a.   A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation...

104. Rule of Professional Conduct 1.7, Conflict of Interest, General Rule, includes:

21

a.   A lawyer shall not represent a client if the
     representation of that client will be
     directly adverse to another client, unless:

     (1)   The lawyer reasonably believes the
           relationship will not adversely affect
           the relationship with the other client;
           and

     (2)   Each client consents after consultation.

b.   A lawyer shall not represent a client if the
     representation of that client may be
     materially limited by the lawyer's
     responsibilities to another client or to a
     third person, or by the lawyer's own
     interests, unless:

     (1)   The lawyer reasonably believes the
           representation will not be adversely
           affected; and

     (2)   The client consents after
           consultation....

c.   For the purpose of this Rule, a client's
     consent cannot be validly obtained and those
     instances in which a disinterested lawyer
     would conclude that the client should not
     agree to the representation under the
     circumstances of a particular situation.

105. Rule of Professional Conduct 1.8, Conflict of

     Interest, Prohibited Transactions, includes:

f.   A lawyer shall not accept compensation for
     representing a client from one other than the
     client unless:

     (1)   The client consents after consultation;

     (2)   There is no interference with the
           lawyer's independence of professional
           judgment or with the client-lawyer
           relationship; and

     (3)   Information relating to representation
           of a client is protected as provided by
           Rule 1.6.

22

106. Rule of Professional Conduct 1.9, Conflict of Interest, Former Client, includes:

    a.  A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

**FIRST CLAIM FOR RELIEF**
**(Negligence of Attorney Sudfeld, Fox, Rothchild, L.L.P., Attorney Angstadt and Power, Bowen and Valimont, L.L.P.)**

107. Ms. Meyers realleges and reincorporates that set forth in paragraphs 1 through 106 above.

108. At all times set forth herein, Attorney Sudfeld was, upon information and belief, a partner of Power, Bowen and Valimont, L.L.P., which was subsequently purchased or otherwise consolidated with Fox Rothchild.

109. There exists imputed liability for the actions of Attorney Sudfeld resulting in liability to Power, Bowen and Valimont and then Fox, Rothchild.

110. Attorney Sudfeld failed to render legal services to Ms. Meyers in a competent and non-negligent manner by engaging in conduct, acts and omissions that fall below acceptable professional standards.

111. Attorney Sudfeld owed to Ms. Meyers a duty to perform all necessary and reasonable legal services in a fair and uncompromised fashion for

23

the benefit of Ms. Meyers and to fairly and adequately perform as her legal counsel.

112. Attorney Sudfeld violated his duty and failed to represent Ms. Meyers in a professional and competent manner.

113. In particular, and without limitation, Attorney Sudfeld engaged in the following acts and omissions that fell below acceptable professional standards:

    a.   Failed to meet the standard of care in his representation of Ms. Meyers pertaining to the "annuity transaction" by failing to secure appraisals prior to approving the participation of M. Meyers in this transaction, as well as failing to adequately and completely investigate the tax ramifications of the same;

    b.   Represented the interests of multiple conflicting parties as to the "annuity transaction" and the sale of the Parking Lot property to the detriment of Ms. Meyers, all without providing proper counsel to her;

    c.   Engaged in unethical billing practices;

    d.   Improperly advised Ms. Meyers of her legal alternatives and the consequences of those

alternatives as to the "annuity transaction" and the sale of the Parking Lot property;

e.  Used unethical tactics to coerce and intimidate Ms. Meyers, an elderly widow, so as to consummate the sale of the Parking Lot property in 2004;

f.  Failed, despite request, to provide to Ms. Meyers copies of legal and billing files; and

g.  Failed to inform Ms. Meyers as to any conflict of interest or disqualify Attorney Angstadt as attorney for Karen and Ciro Torina as to the "annuity transaction."

114. As a direct and proximate result of Attorney Sudfeld's negligence, Ms. Meyers has suffered substantial injuries, damages and losses, in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract by Attorney Sudfeld, Fox, Rothchild, L.L.P. and Power, Bowen and Valimont, L.L.P.)**

115. Ms. Meyers realleges and reincorporates that set forth in paragraphs 1 through 114 above.

116. As it pertains to the legal representation of Ms. Meyers, there existed a contract between Attorney Sudfeld, as well as the law firms with whom he was affiliated, and Ms. Meyers.

117. A term of this agreement, whether or express or implied, is that only reasonable attorneys would be charged by Attorney Sudfeld to Ms. Meyers.

118. The fees charged by Attorney Sudfeld to Ms. Meyers were not reasonable.

119. Ms. Meyers has been damaged by Attorney Sudfeld's breach of contract.

**THIRD CLAIM FOR RELIEF**
**(Breach of Warranty by Attorney Sudfeld, Fox, Rothchild, L.L.P., and Power, Bowen and Valimont, L.L.P.)**

120. Ms. Meyers realleges and reincorporates that set forth in paragraphs 1 through 119 above.

121. Attorney Sudfeld represented to Ms. Meyers, both expressly and impliedly, that he was competent and skilled in the handling of all legal matters entrusted to him by Ms. Meyers.

122. Relying upon Attorney Sudfeld's representations, Ms. Meyers was induced to initially retain and thereafter continue to utilize Attorney Sudfeld as her attorney to represent her in matters set forth more specifically in this Complaint.

123. In failing to represent Ms. Meyers in a proper fashion, Attorney Sudfeld breached a warranty implied in law of good and workmanlike legal services.

124. In failing to represent Ms. Meyers in a proper manner, Attorney Sudfeld breached an expressed warranty of competence and skill.

125. Attorney Sudfeld's breach of warranty arose out of, but is not necessarily limited to, those acts and omissions specifically delineated in the "annuity" transaction and the sale of the Parking Lot property.

126. As a direct and proximate result of Attorney Sudfeld's breach of express and implied warranties, Ms. Meyers has suffered substantial injuries, damages and losses, in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty by Attorney Sudfeld, Fox, Rothchild,**
**L.L.P., Attorney Angstadt and Power, Bowen and Valimont, L.L.P.)**

127. Ms. Meyers realleges and reincorporates that set forth in paragraphs 1 through 126 above.

128. As her legal counsel, Attorney Sudfeld owed to Ms. Meyers a fiduciary duty.

129. Attorney Sudfeld violated this fiduciary duty by failing to, among other things, properly represent Ms. Meyers pertaining to the "annuity" transaction, as well as the sale of the Parking Lot property.

130. Attorney Sudfeld also represented Ms. Meyers during periods of time while there existed

conflicts of interest on his part because of his legal representation of Karen and Ciro Torina or entities under their control.

131. Attorney Sudfeld also failed to communicate with Ms. Meyers that a conflict of interest existed or disqualify Attorney Angstadt in his representation of Karen and Ciro Torina as to the "annuity transaction."

132. Ms. Meyers has incurred damages and losses as a consequence of this breach of fiduciary duty by Attorney Sudfeld.

133. Attorney Sudfeld's breach of fiduciary duty was a cause of Ms. Meyers' losses and damages.

134. The damages complained of by Ms. Meyers are attended by circumstances of malice or insult, or as a consequence of wanton and reckless disregard of her rights and feelings, such that the conduct complained of by Ms. Meyers was purposely committed during a period when Attorney Sudfeld must have realized that such was done heedlessly, reckless, and without due regard to the consequences of the rights of Ms. Meyers.

**FIFTH CLAIM FOR RELIEF**
**(Unjust Enrichment of by Attorney Sudfeld, Fox, Rothchild, L.L.P.**
**and Power, Bowen and Valimont, L.L.P.)**

135. Ms. Meyers realleges and reincorporates that set forth in paragraphs 1 through 134 above.

28

136. The fees for legal services provided by Attorney Sudfeld as to the "annuity transaction" and the sale of the Parking Lot property were not reasonable.

137. Rule of Professional Conduct 1.5 states:

    a.   A lawyer's fee shall be reasonable.  The factors to be considered in determining the reasonableness of the fee include the following:

        (1)   The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service property;

        (2)   The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment for the lawyer;

        (3)   The fee customarily charged in the locality for similar legal services;

        (4)   The amount involved and the results obtained;

        (5)   The time limitations imposed by the client or by the circumstances;

        (6)   The nature and length of the professional relationship with the client;

        (7)   The experience, reputation, and ability of the lawyer or lawyers performing the services; and

        (8)   Whether the fee is fixed or contingent.

138. Attorney Sudfeld, as well as the law firm with whom he was at the time affiliated at the relevant time, was unjustly enriched as a benefit was conferred upon Attorney Sudfeld and the law firms

who employed his services by payment of Ms. Meyers
as a consequence of Attorney Sudfeld charging Ms.
Meyers unreasonable legal fees.

139. Such payments were appreciated by Attorney Sudfeld
and these law firms to the detriment of Ms. Meyers
and Ms. Meyers has been damaged.

140. The benefit paid by Ms. Meyers and accepted by
Attorney Sudfeld under these circumstances would
be inequitable.

141. Attorney Sudfeld was unjustly enriched in a sum
defined by the amount of monies received by his
law firm from Ms. Meyers for legal services,
interest and costs, minus the reasonable fee of
legal services provided by Attorney Sudfeld, if
any.

### SIXTH CLAIM FOR RELIEF
#### (Outrageous Conduct by Attorney Sudfeld,
#### Fox, Rothchild, L.L.P. and Power, Bowen and Valimont, L.L.P.)

142. Ms. Meyers realleges and reincorporates that set
forth in paragraphs 1 through 141 above.

143. Attorney Sudfeld's conduct is so outrageous in
character and so extreme in degree so as to go
beyond all possible bounds of decency and to be
regarded as atrocious and utterly intolerable in a
civilized community, particularly in light of the
fact that Attorney Sudfeld is a long time member
of the Pennsylvania bar and experienced counsel.

144. Attorney Sudfeld's actions as set forth herein constitutes extreme and outrageous conduct.

145. Attorney Sudfeld engaged in the conduct complained of herein recklessly and with the intent of causing Ms. Meyers, a widow and senior citizen, severe emotional distress such that Ms. Meyers experienced severe emotional distress caused by Attorney Sudfeld's conduct.

146. The damages complained of by Ms. Meyers are attended by circumstances of malice or insult, or as a consequence of wanton and reckless disregard of Ms. Meyers' rights and feelings such that the conduct complained of by Attorney Sudfeld was purposely committed during a period when Ms. Meyers was particularly vulnerable and Attorney Sudfeld had to have realized that such was done heedlessly, recklessly and without due regard to the consequences or of the rights of Ms. Meyers.

**SEVENTH CLAIM FOR RELIEF**
**(Fraud by Attorney Sudfeld, Fox, Rothchild, L.L.P. and Power, Bowen and Valimont, L.L.P.)**

147. Ms. Meyers realleges and reincorporates that set forth in paragraphs 1 through 146 above.

148. Attorney Sudfeld concealed a past facts and failed to disclose to Ms. Meyers his conflicting legal relationship with Karen and Ciro Tornia, as well

as legal entities in their control or owned by
them.

149. These facts were material.

150. Attorney Sudfeld concealed and otherwise failed to
disclose this information to Ms. Meyers with the
intent of creating a false impression of the
actual facts in the mind of Ms. Meyers.

151. Attorney Sudfeld concealed and otherwise failed to
disclose this information to Ms. Meyers with the
specific intent that Ms. Meyers would continue to
utilize his legal services, which she might not
have done had she known of this conflict of
interest.

152. Ms. Meyers continued to utilize the legal services
of Attorney Sudfeld relying on the assumption that
the concealed and undisclosed facts did not exist
or here different then what such actually were.

153. This reliance caused injuries, damages and losses
to Ms. Meyers.

### EIGHTH CLAIM FOR RELIEF
**(Negligence of Attorney Angstadt and Eastburn and Gray, P.C.)**

154. Ms. Meyers realleges and reincorporates that set
forth in paragraphs 1 through 153 above.

155. At all times set forth herein, Attorney Angstadt
was, upon information and belief, a partner of
Eastburn and Gray, P. C.

156. There exists imputed liability for the actions of Attorney Angstadt resulting in liability to Eastburn and Gray.

157. Attorney Angstadt failed to render legal services to Ms. Meyers in a competent and non-negligent manner by engaging in conduct, acts and omissions that fall below acceptable professional standards.

158. Attorney Angstadt owed to Ms. Meyers a duty to perform all necessary and reasonable legal services in a fair and uncompromised fashion for the benefit of Ms. Meyers and to fairly and adequately perform as her legal counsel.

159. Attorney Angstadt violated his duty owed to Ms. Meyers as a former client in his representation of Karen and Ciro Torina in the "annuity transaction."

160. In particular, and without limitation, Attorney Angstadt engaged in the following acts and omissions that fell below acceptable professional standards:

   a.   Represented the interests of conflicting parties to the detriment of Ms. Meyers, all without providing proper counsel to her or seeking and securing a written waiver of conflict;

   b.   Engaged in unethical billing practices;

161. As a direct and proximate result of Attorney Angstadt's negligence, Ms. Meyers has suffered

substantial injuries, damages and losses, in an amount to be proven at trial.

### NINTH CLAIM FOR RELIEF
**(Breach of Warranty by Attorney Angstadt and Eastburn and Gray, P.C.)**

162. Ms. Meyers realleges and reincorporates that set forth in paragraphs 1 through 161 above.

163. Attorney Angstadt represented to Ms. Meyers, both expressly and impliedly, that he was competent and skilled in upholding his professional duties as to Ms. Meyers.

164. Relying upon Attorney Angstadt's representations, Ms. Meyers was induced to retain Attorney Angstadt as her attorney to represent her in matters set forth more specifically in this Complaint.

165. In failing to uphold his professional duties to Ms. Meyers by engaging in conflicting legal representation of Karen and Ciro Tornia, Attorney Angstadt breached a warranty implied in law of good and workmanlike legal services.

166. In failing to uphold his professional duties to Ms. Meyers, Attorney Angstadt breached an expressed warranty of competence and skill.

167. Attorney Angstadt's breach of warranty arose out of, but is not necessarily limited to, those acts and omissions specifically delineated in the "annuity transaction."

168. As a direct and proximate result of Attorney
     Angstadt's breach of express and implied
     warranties, Ms. Meyers has suffered substantial
     injuries, damages and losses, in an amount to be
     proven at trial.

### TENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty by Attorney Angstadt and Eastburn and Gray, P.C.)

169. Ms. Meyers realleges and reincorporates that set
     forth in paragraphs 1 through 168 above.

170. As her legal counsel, Attorney Angstadt owed to
     Ms. Meyers a fiduciary duty, even after his formal
     legal representation of her had been completed.

171. Attorney Angstadt violated this fiduciary duty by
     representing the interests of Karen and Ciro
     Tornia as to the "annuity transaction."

172. Ms. Meyers has incurred damages and losses as a
     consequence of this breach of fiduciary duty by
     Attorney Angstadt.

173. Attorney Angstadt's breach of fiduciary duty was a
     cause of Ms. Meyers' losses and damages.

### ELEVENTH CLAIM FOR RELIEF
### (Breach of Contract by Attorney Angstadt and Eastburn and Gray, P.C.

174. Ms. Meyers realleges and reincorporates that set
     forth in paragraphs 1 through 173 above.

175. As it pertains to the legal representation of Ms. Meyers, there existed a contract between Attorney Angstadt and Ms. Meyers.

176. The term of this agreement, whether or express or implied, is that Attorney Angstadt would act consistent with his professional duties to former clients.

177. Attorney Angstadt breached his contract with Ms. Meyers by representing the interests of Mr. and Mrs. Torina in the "annuity transaction."

178. Ms. Meyers has been damaged by Attorney Angstadt's breach of contract.

**TWELFTH CLAIM FOR RELIEF**
**(Negligence of C.P.A. Katsock and J.J. Katsock and Company)**

179. Ms. Meyers realleges and reincorporates that set forth in paragraphs 1 through 178 above.

180. At all times set forth herein, C.P.A. Katsock was, upon information and belief, the sole shareholder, officer and director of J.J. Katsock and Company.

181. There exists imputed liability for the actions of C.P.A. Katsock resulting in liability to Power, J.J. Katsock and Company.

182. C.P.A. Katsock failed to render accounting services to Ms. Meyers in a competent and non-negligent manner by engaging in conduct, acts and omissions that fall below acceptable professional standards.

183. C.P.A. Katsock owed to Ms. Meyers a duty to perform all necessary and reasonable accounting services in a fair and uncompromised fashion for the benefit of Ms. Meyers and to fairly and adequately perform as her accountant.

184. C.P.A. Katsock violated his duty and failed to represent Ms. Meyers in a professional and competent manner.

185. In particular, and without limitation, C.P.A. Katsock engaged in the following acts and omissions that fell below acceptable professional standards:

   a.   Failed to meet the standard of care in his representation of Ms. Meyers pertaining to the "annuity transaction" by failing to adequately and completely investigate the tax ramifications of the same;

   b.   Represented the interests of multiple conflicting parties to the detriment of Ms. Meyers, all without providing proper advice to her;

   c.   Engaged in unethical billing practices;

   d.   Improperly advised Ms. Meyers of her tax alternatives and the consequences of those alternatives;

   e.   Filed tax returns with the United States Department of the Treasury and the Commonwealth of Pennsylvania that he knew contained material misrepresentations of fact.

   f.   Failed to advise Ms. Meyers of her duty to file state income tax returns with the State of Colorado.

37

186. As a direct and proximate result of C.P.A. Katsock negligence, Ms. Meyers has suffered substantial injuries, damages and losses, in an amount to be proven at trial.

**THIRTEENTH CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty by of C.P.A. Katsock and J.J. Katsock and Company)**

187. Ms. Meyers realleges and reincorporates that set forth in paragraphs 1 through 186 above.

188. As her accountant, C.P.A. Katsock owed to Ms. Meyers a fiduciary duty.

189. C.P.A. Katsock violated this fiduciary duty by failing to properly represent Ms. Meyers pertaining to the "annuity" transaction, as set forth above.

190. Ms. Meyers has incurred damages and losses as a consequence of this breach of fiduciary duty by C.P.A. Katsock.

191. C.P.A. Katsock's breach of fiduciary duty was a cause of Ms. Meyers' losses and damages.

192. The damages complained of by Ms. Meyers are attended by circumstances of malice or insult, or as a consequence of wanton and reckless disregard of her rights and feelings, such that the conduct complained of by Ms. Meyers was purposely committed during a period when C.P.A. Katsock must have realized that such was done heedlessly,

38

reckless, and without due regard to the consequences of the rights of Ms. Meyers.

### FOURTEENTH CLAIM FOR RELIEF
### (Outrageous Conduct of C.P.A. Katsock and J.J. Katsock and Company)

193. Ms. Meyers realleges and reincorporates that set forth in paragraphs 1 through 192 above.

194. C.P.A. Katsock conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, particularly in light of the fact that C.P.A. Katsock is a licensed Certified Public Accountant and experienced accountant.

195. C.P.A. Katsock's actions as set forth herein constitutes extreme and outrageous conduct.

196. C.P.A. Katsock engaged in the conduct complained of herein recklessly and with the intent of causing Ms. Meyers severe emotional distress such that Ms. Meyers experienced severe emotional distress caused by C.P.A. Katsock's conduct.

197. The damages complained of by Ms. Meyers are attended by circumstances of malice or insult, or as a consequence of wanton and reckless disregard of Ms. Meyers' rights and feelings such that the conduct complained of by C.P.A. Katsock was purposely committed during a period when Ms.

Meyers was particularly vulnerable and C.P.A. Katsock had to have realized that such was done heedlessly, recklessly and without due regard to the consequences or of the rights of Ms. Meyers.

### FIFTEENTH CLAIM FOR RELIEF
**(Unjust Enrichment of C.P.A. Katsock and J.J. Katsock and Company)**

198. Ms. Meyers realleges and reincorporates that set forth in paragraphs 1 through 197 above.

199. The fees for accounting services provided by C.P.A. Katsock are not reasonable.

200. C.P.A. Katsock may charge Ms. Meyers for reasonable and necessary accounting related services consistent with the customs of billing in the locale in which he practices.

201. C.P.A. Katsock was unjustly enriched as a benefit was conferred upon C.P.A. Katsock and the accounting firm who employed his services by payment of Ms. Meyers as a consequence of C.P.A. Katsock charging Ms. Meyers unreasonable fees.

202. Such payments were appreciated by C.P.A. Katsock to the detriment of Ms. Meyers and Ms. Meyers has been damaged.

203. The benefit paid by Ms. Meyers and accepted by C.P.A. Katsock under these circumstances would be inequitable;

204. C.P.A. Katsock was unjustly enriched in a sum
defined by the amount of monies received by his
law firm from Ms. Meyers for accounting services,
interest and costs, minus the reasonable fee of
accounting services provided by C.P.A. Katsock, if
any.

WHEREFORE, Ms. Meyers demands judgment in favor of Plaintiff
against Defendants, jointly and severally, in an amount to be
determined by this court in an amount in excess of Seventy-five
Thousand Dollars ($75,000.00), plus interest as provided by law
at a rate calculated in accordance with applicable law in effect,
exemplary or punitive damages, economic and non-economic damages,
special, general and consequential damages, as well as
reimbursement of costs, expert witness fees, attorneys' fees, and
costs and for such further relief as deemed appropriate in this
matter.

**PLAINTIFF DEMANDS A TRIAL BY JURY
CONCERNING ALL ISSUES RAISED HEREIN**

Respectfully submitted this ___ day of June, 2005.

RALPH A. CANTAFIO, P.C.
By:  Ralph A. Cantafio, Esq.
Signature Validation Code: RAC5431
P. O. Box 774567
Steamboat Springs, Colorado 80477
(970) 879-4567  Fax:(970) 879-4511

Plaintiff's Address:

Diana R. Meyers
P. O. Box 881854
Steamboat Springs, Colorado 80488

Cantafio Law
Computer Code:  Y:\CIVIL\Meyers Diana\Complaint 061305.wpd