IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DIANA R. MEYERS                    :              CIVIL ACTION
                                   :
                                   :
            v.                     :
                                   :
                                   :
HERBERT K. SUDFELD, et al.         :              No.  05-2970

## MEMORANDUM

**Padova, J.**                                            **February 21, 2006**

Plaintiff has brought this diversity action against her former attorneys and accountant for monetary damages arising from alleged professional negligence and other misconduct.  Before the Court are the Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Defendants Herbert K. Sudfeld, Jr., Esquire, Power, Bowen, and Valimont, LLP, and Fox Rothchild, LLP (collectively, the "Sudfeld Defendants"), the Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Defendants John Katsock, C.P.A. and J.J. Katsock and Company (collectively, "Katsock"), and the Motion to Dismiss Pursuant to Rule 12(b)(6) filed by Defendants Edwin C. Angstadt, Jr., Esquire, and Eastburn and Gray, P.C. (collectively, the "Angstadt Defendants").  A hearing on these Motions was held on January 4, 2006, and the matters have been fully briefed by the parties.  For the reasons that follow, the Sudfeld Defendants' Motion is granted in part and denied in part, Katsock's Motion is granted in part and denied in part, and the Angstadt Defendants' Motion is granted in part and denied in part.

I.      BACKGROUND

The Complaint alleges the following relevant facts.  Plaintiff, Diana Meyers, was married to Francis John Meyers ("Mr. Meyers") on January 16, 1968.  (Compl. ¶ 22.)  Mr. Meyers owned various business interests, including a parcel of real property in New Hope, Pennsylvania ("the Canal

House Property"). The Canal House Property consisted of a restaurant/lounge operated by Mr. Meyers ("the Canal House Restaurant"), apartment units, and commercial rental space. (Id. ¶¶ 24-25.) Plaintiff was not involved in her husband's business decisions. (Id. ¶ 29.) Defendant Herbert Sudfeld—then a partner with Defendant Power, Bowen, and Valimont, LLP—provided legal services to Mr. Myers with respect to personal and business matters. (Id. ¶ 34.)

After Mr. Meyers learned that he had terminal cancer, he and Plaintiff met with Attorney Sudfeld, at which meeting Sudfeld agreed that he would "look after" Plaintiff after Mr. Meyers's death. (Id. ¶ 35.) At the insistence of Karen Torina ("Ms. Torina"), Mr. Meyers's granddaughter from a previous marriage, Mr. Meyers and Plaintiff also met with Defendant Edwin Angstadt, an attorney for Defendant Eastburn and Gray, P.C., in order to draft wills and related documents. (Id. ¶ 36.) Ms. Torina had a previous professional relationship with the Angstadt Defendants. (Id. ¶ 37.)

Mr. Meyers passed away in June 1998, and Plaintiff was named Executrix of his estate. (Id. ¶¶ 30, 38-39.) The Angstadt Defendants were retained as legal counsel to assist with probating the estate in Bucks County, and, in connection with these services, Defendant Angstadt made representations to Plaintiff as to the value of real property and assets in the estate. (Id. ¶¶ 38, 40-41.) Ms. Meyers received from the estate, among other things, the Canal House Property and another parcel of land referred to as "the Parking Lot Property." (Id. ¶ 42.)

Plaintiff soon relocated from Bucks County to Colorado. (See id. ¶ 44.) In late 1999, Plaintiff was undergoing treatment for uterine cancer when Ms. Torina and her husband, Ciro Torina, offered to purchase Plaintiff's interest in both the Canal House property and the Parking Lot Property. (Id. ¶¶ 43-45, 47.) Plaintiff and the Torinas executed an agreement of sale on December 31, 1999 (the "Annuity Agreement"). (Id. ¶ 47.)

2

The sale of the two properties was structured as an annuity transaction on the advice of Defendant John Katsock, whom Plaintiff had since retained as her accountant at Ms. Torina's urging. (Id. ¶¶ 52-53, 57.)  In the transaction, Plaintiff was represented by Attorney Sudfeld[1] and the Torinas were represented by Attorney Angstadt.  (Id. ¶ 50.)  Neither Sudfeld nor Angstadt discussed the inherent conflict of interest arising from Angstadt's former representation of Plaintiff, nor did they require that Plaintiff execute any documents waiving the conflict. (Id. ¶¶ 51, 59-60.)  Further, Sudfeld never secured an appraisal of the properties or of the Canal House Restaurant.  (Id. ¶ 62.) Defendant Katsock simultaneously provided accounting services to the Torinas, to Plaintiff, and to the Canal House Restaurant with respect to the transaction without ever advising Plaintiff as to the conflict of interest arising from these multiple representations.  (Id. ¶¶ 55, 64-66.)  Katsock did not suggest or secure an appraisal of the properties to determine whether the proposed sale was in Plaintiff's financial interest.  (Id. ¶ 69.)

On May 11, 2000, pursuant to the Annuity Agreement, Plaintiff conveyed the two properties to the Torinas, and a mortgage securing a promissory note to the benefit of Plaintiff was recorded. (Id. ¶ 58.)  Ms. Meyers was to receive $4,500 per month for life in exchange for the conveyance. (Id. ¶ 57.)  Both Katsock and Sudfeld told Plaintiff that the compensation she received would not be subject to taxation; neither Defendant conducted legal research to determine whether the transaction was consistent with the Internal Revenue Code.  (Id. ¶¶ 68, 70.)  The value of the properties, without even considering the value of the Canal House Restaurant itself, "far exceeded" the value being provided to Plaintiff.  (Id. ¶ 63.)  However, Plaintiff had relied upon the accounting

---

[1]By this time, Defendant Sudfeld was a partner with Defendant  Fox Rothchild, which had acquired or merged with Defendant Power, Bowen, and Valimont, LLP.  (See Compl. ¶¶ 50, 108.)

advice provided to her by Katsock, and continued to rely on such advice.  (Id. ¶ 54.)

In 2001, the Torinas wished to modify the Annuity Agreement; the debt was amended, and a new promissory note and mortgage were executed.  (Id. ¶ 71.)  Sudfeld provided legal counsel to Plaintiff pertaining to the modification of the agreement, but the Torinas paid his legal fees.  (Id. ¶ 72.)  Plaintiff was not advised of this conflict of interest.  (Id. ¶ 73.)  The revised Mortgage did not allocate any debt to the Canal House Restaurant and the Parking Lot Property.  (Id. ¶ 75.)  Attorney Sudfeld never terminated his professional relationship with Plaintiff yet he represented the Torinas and the Canal House Restaurant throughout 2003.  (Id. ¶ 75.)

The Torinas later decided to liquidate certain of their assets, including the Canal House Property and the Parking Lot Property.  (Id. ¶¶ 82-83.)  In August 2004, the Torinas agreed to sell the Parking Lot Property to a third party.  (Id. ¶ 84.)  Sudfeld represented Plaintiff's interests in this transaction, but did not review the sale agreement between the Torinas and the buyer and did not present the terms to Plaintiff.  (See id. ¶¶ 85-86, 89.)  Sudfeld unilaterally agreed that Meyers would receive a total of $560,000 for the release of her security interest in both properties: she would receive $150,000 at the closing for the Parking Lot Property, and the balance of $410,000 would be reduced by payments of $6000 per month consistent with the modified Annuity Agreement, until the sale of the Canal House Property, when the balance would come due.  (Id. ¶¶ 87-88.)  Sudfeld represented to another attorney involved in the transaction that he had the authority to accept this financial settlement on Plaintiff's behalf in his capacity as legal counsel for the Torinas.  (Id. ¶ 91.)  He did not secure an appraisal of the Parking Lot Property's value to determine whether the sales price was fair, nor did he attempt to justify his calculation that $150,000 was the proper allocation of debt.  (Id. ¶¶ 92, 94.)  He did not consider the tax implications for Plaintiff of the lump-sum

payment as contrasted to the Annuity Agreement.  (Id. ¶ 93.)  Plaintiff, having never approved the terms, refused to execute the Mortgage Satisfaction documents subsequent to closing the sale of the Parking Lot Property.  (Id.)

II.    LEGAL STANDARD

In determining a Motion to Dismiss under Rule 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).   The court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  A Rule 12(b)(6) motion will be granted when a plaintiff cannot prove any set of facts, consistent with the complaint, which would entitle him or her to relief.  Ransom v. Marrazzo, 848 F.2d 398,  401 (3d Cir. 1988).

III.   THE SUDFELD DEFENDANTS' MOTION TO DISMISS

Plaintiff brings the following state-law claims against the Sudfeld Defendants: negligence (First Claim for Relief); breach of contract (Second Claim for Relief); breach of warranty (Third Claim for Relief); breach of fiduciary duty (Fourth Claim for Relief); unjust enrichment (Fifth Claim for Relief); outrageous conduct (Sixth Claim for Relief); and fraud (Seventh Claim for Relief).  The Sudfeld Defendants move to dismiss all but the negligence claim.

A.    Breach of Contract

In her Second Claim for Relief, Plaintiff alleges that Attorney Sudfeld breached the attorney-client agreement by charging unreasonable legal  fees in violation of either an express or an implied term of the contract.  The Sudfeld Defendants argue that Plaintiff has not stated a claim upon which relief can be granted because she has not alleged the required elements of a breach of contract claim

5

and because, in general, the Complaint sounds in tort, not contract.

Under Pennsylvania law,[2] a plaintiff must plead "(1) the existence of a contract to which the plaintiff and defendant were parties; (2) the essential terms of the contract; (3) a breach of the duty imposed by the contract and (4) that damages resulted from the breach." Halstead v. Motorcycle Safety Foundations, Inc., 71 F. Supp. 2d 455, 458 (E.D. Pa. 1999) (citing Electron Energy Corp. v. Short, 597 A.2d 175 (Pa. Super. Ct. 1991), aff'd, 618 A.2d 395 (Pa. 1993); General State Authority v. Coleman Cable & Wire Co., 365 A.2d 1347 (Pa. Commw. Ct. 1976)).  A contract may be express, or may be implied in fact "when the parties agree upon the obligation to be incurred, but their intention is not expressed in words and is, instead, inferred from their actions in light of the surrounding circumstances."  Id. at 459 (citing Dep't of Envtl. Resources v. Winn, 597 A.2d 281, 284 n.3 (Pa. Commw. Ct. 1991)).  The Complaint alleges that there was an agreement between Plaintiff and Attorney Sudfeld, the legal effect of which is that Sudfeld would provide legal services to Plaintiff in exchange for compensation.  (Compl. ¶¶ 50, 59, 85, 102, 116-18.)  It further alleges that one of the terms of the contract was that only reasonable attorney's fees would be charged (id. ¶ 117), but that Sudfeld in fact charged unreasonable fees.  (Id. ¶ 118.)  As a result, Plaintiff suffered damages.  (Id. ¶ 119.)  Therefore, the Complaint alleges facts in support of each of the elements of a breach of contract claim: an agreement between herself and Sudfeld, its terms, a breach of the contractual duty to charge reasonable fees, and damages.

The Sudfeld Defendants further argue that Plaintiff has not pleaded facts showing that they breached the contract; that is, she has not pleaded facts demonstrating that Sudfeld's fees were, in fact,  unreasonable.  "The Federal Rules of Civil Procedure do not . . . require detailed pleading of

---

[2]The parties agree that Pennsylvania law governs Plaintiff's claims.

the facts upon which a claim is based." <u>DaimlerChrysler Corp. v. Askinazi</u>, No.  Civ. A. 99-5581,

2000 WL 964753, at *2 (E.D. Pa. Jul. 12, 2000).  While a court "need not credit a complaint's 'bald

assertions' or 'legal conclusions' when deciding a motion to dismiss," <u>Morse v. Lower Merion Sch.</u>

<u>Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997) (quoting <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d

1410, 1429-30 (3d Cir. 1997)), the claim may not be dismissed unless Plaintiff would not be entitled

to relief "under any set of facts that could be proved consistent with the allegations."  <u>Hudson v.</u>

<u>King & Spalding</u>, 467 U.S. 69, 73 (1984).  Plaintiff may be able to prove facts, consistent with the

Complaint's overall allegations of Sudfeld's errors and omissions, supporting her claim that the fees

were unreasonable.

     The Sudfeld Defendants also argue that Plaintiff's claims are legal malpractice claims that

sound in tort, not contract.  Pennsylvania law, however, allows a client to bring a legal malpractice

claim in both assumpsit (contract) and trespass (tort).  <u>See</u> <u>Bailey v. Tucker</u>, 621 A.2d 108, 112 (Pa.

1993).  Accordingly, the Court declines to dismiss Plaintiff's Second Claim for Relief.

     B.   <u>Breach of Warranty</u>

     In her Third Claim for Relief, Plaintiff alleges that Attorney Sudfeld breached an implied

warranty of good and workmanlike legal services as well as an express warranty of competence and

skill by failing to represent her in a competent fashion.  (Compl. ¶¶ 123-24.)  The Sudfeld

Defendants argue that: (1) the claim for breach of an express warranty is in actuality a breach of

contract claim; and (2) there is no cause of action for Pennsylvania law for breach of an implied

warranty against an attorney for legal services rendered.

     In Pennsylvania, a client may properly bring an action for breach of the attorney-client

agreement if an attorney agrees to provide his best efforts and fails to do so.  <u>Bailey</u>, 621 A.2d at 115.

A client may also bring a breach of contract action for an attorney's implied promise to provide "professional services consistent with those expected of the profession at large." <u>Id.</u>; <u>Gorski v. Smith</u>, 812 A.2d 683, 694 (Pa. Super. Ct. 2003) ("[A] breach of contract claim may properly be premised on an attorney's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large."). Plaintiff's Third Claim for Relief comports with these theories of contractual relief. It alleges that Sudfeld guaranteed competent representation and failed to provide it. (Compl. ¶¶ 121, 124.) It also alleges that he breached an implied promise to provide good and workmanlike legal services (<u>id.</u> ¶ 123); that is, that Sudfeld failed to provide legal services in a manner consistent with the profession at large.

Plaintiff's Third Claim for Relief thus alleges facts which would entitle her to relief for a breach of an express or implied warranty regardless of whether they are brought under the title of breach of warranty or breach of contract. The exercise of "matching facts to a legal theory was an aspect of code pleading interred in 1938 with the adoption of the Rules of Civil Procedure." <u>Albiero v. City of Kankakee</u>, 122 F.3d 417, 419 (7th Cir. 1997). Regardless of whether the pleader specifies an incorrect legal theory, a complaint will withstand Rule 12(b)(6) scrutiny if relief may be granted under any set of facts consistent with the allegations pled therein. <u>See</u> <u>White v. WMC Mortg. Corp.</u>, No. Civ. A. 01-1427, 2001 WL 1175121, at *1 (E.D. Pa. July 31, 2001) ("Instead of asking whether the complaint points to the appropriate [law], a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations.") (citation omitted). Accordingly, the Court declines to dismiss Plaintiff's Third Claim for Relief.[3]

---

[3]Defendants also argue that, regardless of how Plaintiff's Third Claim for Relief is titled, it is merely a creative restatement of her First Claim for Relief (negligence) and her Second Claim for Relief (breach of contract). First, the Court has already stated that Plaintiff may bring a legal

C.    Breach of Fiduciary Duty

In her Fourth Claim for Relief, Plaintiff alleges that Sudfeld breached his fiduciary duty by failing to properly represent Plaintiff and by concurrently representing parties with conflicting interests. The Sudfeld Defendants do not dispute that they had a fiduciary relationship with Plaintiff; rather, they argue that the claim is unnecessary because it merely restates Plaintiff's negligence claim.

An action for breach of fiduciary duty may be maintained by pleading and proving "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of the plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit was a real factor in bringing about plaintiff's injuries." McDermott v. Party City Corp., 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998) (citing Pa. SSJI (Civ.) § 4.16 (1991)). In other words, an attorney owes his client "undivided loyalty." Maritrans GP, Inc. v. Pepper, Hamilton, & Scheetz, 602 A.2d 1277, 1283 (Pa. 1992) (holding that attorneys' breach of fiduciary duty of loyalty is actionable). Negligence, on the other hand, consists of a breach of the duty to exercise the kind of care usually exercised by a reasonable person of ordinary prudence under like circumstances. Karavos v. Poulos, 113 A.2d 300, 304 (Pa. 1955) (defining due care); see also Stevens v. Reading St. Ry. Co., 121 A.2d 128, 134 (Pa. 1956)

---

malpractice action under the theories of both contract and tort. Second, the breach of warranty and breach of contract claims, while similar, are sufficiently distinct to survive a 12(b)(6) motion. The claim for breach of warranty is based on a contractual duty of competence, while the claim for breach of contract is based on a contractual duty to charge reasonable legal fees. Even if dismissing the breach of warranty claim may excise an "apparent redundancy," at this stage of the litigation it is appropriate to allow Plaintiff to "refine [her] theories of liability . . . with the aid of discovery." See Tower Air, Inc. v. Nachtomi, 416 F.3d 229, 242 (3d Cir. 2005) (reversing district court's dismissal of possibly duplicative count).

(holding that a cause of action for negligence requires proof of a duty and breach of that duty).  Thus, a claim of breach of the fiduciary duty of loyalty represents a distinct cause of action from a claim of negligence, which implicates a duty of care.  The Complaint alleges facts that would entitle Plaintiff to relief for a breach of the duty of loyalty by the Sudfeld Defendants; namely, that Sudfeld concurrently represented Plaintiff and the Torinas.  Accordingly, the Court declines to dismiss Plaintiff's Fourth Claim for Relief.

> D.   Unjust Enrichment

In her Fifth Claim for Relief, Plaintiff alleges that the Sudfeld Defendants were unjustly enriched by charging unreasonable legal fees.  Unjust enrichment results when the defendant inequitably retains benefits conferred by the plaintiff.   Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. Ct. 1995).  The Sudfeld Defendants argue that the claim of unjust enrichment is inapplicable to the facts of this case.  Yet, in federal court, a plaintiff may plead alternate or inconsistent claims.  See Fed. R. Civ. P. 8(e)(2).  Plaintiff may fail to prove the existence of a contract yet establish that the fees paid were not commensurate with the services received and that it would be inequitable for the Sudfeld Defendants to retain all or a portion of her payments.  At this stage in the proceedings, dismissal of Plaintiff's unjust enrichment claim is not warranted.  Accordingly, the Court declines to dismiss Plaintiff's Fifth Claim for Relief.

> E.   Outrageous Conduct

In her Sixth Claim for Relief, Plaintiff alleges that Sudfeld engaged in outrageous conduct.  Plaintiff concedes that a cause of action for outrageous conduct does not exist under Pennsylvania law, and that she has not alleged the required elements of a claim for negligent or intentional infliction of emotional distress.  Accordingly, the Court dismisses Plaintiff's Sixth Claim for Relief.

10

F.    Fraud

In her Seventh Claim for Relief, Plaintiff alleges that Sudfeld engaged in fraud by suppressing conflicts of interest in order to retain Plaintiff as a client.  The Sudfeld Defendants argue that Plaintiff has not pleaded the circumstances of the fraud with particularity as required by Federal Rule of Civil Procedure 9(b).   "Rule 9(b) requires plaintiffs to plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Seville Indus. Mach. Corp. v. Southmost Corp., 742 F.2d 786, 791 (3d Cir.1984).  There is no formula for pleading fraud with particularity: "[a]llegations of 'date, place, or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  Id.

In Pennsylvania, a claim for fraud must allege: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."  Manning v. Temple Univ., No. Civ. A. 03-4012, 2004 WL 3019230, at *10 (E.D. Pa. Dec. 30, 2004) (quoting Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994)).  "The concealment of a material fact can amount to a culpable misrepresentation no less than does an intentional false statement."  Moser v. DeSetta, 589 A.2d 679, 682 (Pa. 1991) (citing Commonwealth v. Monumental Props., Inc., 329 A.2d 812, 829 (Pa. 1974)).  The Complaint alleges all the required elements of a claim of fraud: Sudfeld concealed material facts of which he was aware.  (Compl. ¶¶ 148-49.)  He did so with the

11

intent that Plaintiff would continue to use his legal services (id. ¶ 151), and Plaintiff relied on that misrepresentation (id. ¶ 152), thereby causing injury to her.  (Id. ¶ 153.)  Further, the Complaint alleges the accompanying facts with sufficient particularity to substantiate her claim.  It specifies the content and time frame of the misrepresentation: Sudfeld intentionally neglected to identify his concurrent representation of the Torinas and their business interests from 2001 to 2003.  (See id. ¶¶ 71-75, 148.)  The pleadings place the Sudfeld Defendants on notice of the nature of the alleged misconduct.  Accordingly, the Court finds that the Complaint pleads fraud with sufficient particularity to comply with the requirements of Rule 9(b).  Accordingly, the Court declines to dismiss Plaintiff's Seventh Claim for Relief.

III.    KATSOCK'S MOTION TO DISMISS

Plaintiff brings the following claims against Defendant Katsock: negligence (Twelfth Claim for Relief); breach of fiduciary duty (Thirteenth Claim for Relief); outrageous conduct (Fourteenth Claim for Relief); and unjust enrichment (Fifteenth Claim for Relief).  Katsock moves to dismiss all but the negligence claim.  Additionally, he moves to dismiss any remaining claims arising from the accounting services he provided in connection with the Annuity Agreement as time-barred.

A.    Breach of Fiduciary Duty, Outrageous Conduct, and Unjust Enrichment

In her Thirteenth Claim for Relief, Plaintiff alleges that Katsock breached his fiduciary duty by failing to properly represent Plaintiff with respect to the Annuity Agreement.  Katsock seeks dismissal of this claim on the grounds that is duplicative of Plaintiff's negligence claim in her Twelfth Claim for Relief.  The Court declines to dismiss this claim because, as discussed in Part II.C, it states a distinct theory of relief, at least insofar as it alleges Katsock's breach of the duty of loyalty. Further, the claim alleges intentional, rather than negligent, behavior.

In her Fourteenth Claim for Relief, Plaintiff alleges that Katsock engaged in outrageous conduct.  Katsock seeks dismissal of this claim on the grounds that it does not state a recognized theory of relief.  For the reasons stated in Part II.E, the Court dismisses this claim because it does not plead any cause of action recognized by Pennsylvania law.  In her Fifteenth Claim of Relief, Plaintiff alleges that Katsock was unjustly enriched by charging unreasonable fees.  Katsock seeks dismissal of this claim on the grounds that it is inapplicable to the facts of this case.  The Court concludes that the Complaint adequately alleges that it would be inequitable for Katsock to retain the benefits conferred upon him by Plaintiff.  See Schenck, 666 A.2d at 328 (setting forth the elements of a cause of action for unjust enrichment).  Accordingly, the Court declines to dismiss Plaintiff's Fifteenth Claim for Relief.

B.    Statute of Limitations

Katsock moves to dismiss Plaintiff's claims that arise from Katsock's role in the formation of the original Annuity Agreement; he argues that these claims are barred by the statute of limitations.  He thereby seeks to eliminate portions of the Twelfth Claim for Relief (negligence) and all of the Thirteenth Claim for Relief (breach of fiduciary duty),[4] which allege that Katsock caused damages to Plaintiff by failing to investigate the tax ramifications of the Annuity Agreement and to

---

[4]The unjust enrichment claim is not barred by the statute of limitations.  Although claims for unjust enrichment are governed by Pennsylvania's four-year statute of limitations regarding actions on contract,  42 Pa. Cons. Stat. Ann. § 5525(4); Gannon v. Nat'l R.R. Passenger Corp., No. Civ. A. 03-4501, 2004 WL 1274384, at *2 (E.D. Pa. June 10, 2004) (citing Cole v. Lawrence, 701 A.2d 987, 989 (Pa. Super. Ct. 1997)), such a claim does not accrue until the relationship of the parties is terminated.  Colonial Assurance Co. v. the Mercantile and General Reassurance Co., No. Civ. A. 03-1818, 2004 WL 414078, at *2 (E.D. Pa. Mar. 1, 2004) (citing Cole, 701 A.2d at 989).  Based on the Complaint and its attachments, the professional relationship between Plaintiff and Katsock continued until at least December 31, 2003.  (See Compl. Ex. S-1.)  The instant action was filed on June 20, 2005, within four years of the accrual of the cause of action.

give proper tax advice, by representing the interests of conflicting parties, and generally by failing to properly represent her interests with respect to the Agreement.  Plaintiff argues that the statutory period was tolled by her inability to discover that she had been injured.  The Court will not grant a 12(b)(6) motion based on a statute of limitations defense "unless the complaint shows facial noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading."  In re: Equimed, Inc. Sec. Litig., Master File No. 98-cv-5374(NS), CLASS ACTION, 2000 U.S. Dist. LEXIS 6209, at *24 (E.D. Pa. May 9, 2000) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)).

The parties agree that Pennsylvania's two-year statute of limitations for actions sounding in tort applies to the claims.  See 42 Pa. Cons. Stat. Ann. § 5524(7).  In general, the statutory period begins to run at the time the cause of action accrues, that is, when the right to institute and maintain a suit arises.  Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005).  "Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute."  Fine, 870 A.2d at 857 (citing Nesbitt v. Erie Coach Co., 204 A.2d 473, 475 (Pa. 1964)).  Under this analysis, Plaintiff's claims arising from an alleged breach of duty with respect to the formation of the original Annuity Agreement would have been barred by May 11, 2002, that is, two years after the consummation of the Annuity Agreement and the last action constituting the breach occurred.  See Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co., 372 F.2d 18, 20 (3d Cir. 1966) ("[T]he statute begins to run when the cause of action arises, as determined by the occurrence of the final significant event necessary to make the claim suable." (citing, inter alia, Foley v. Pittsburgh-Des Moines Co., 68 A.2d 517 (Pa. 1949))).  Plaintiff did not file the instant action until June 20, 2005.

Plaintiff invokes the "discovery rule," which delays accrual of a cause of action "when the

14

injured party is unable, despite the exercise of due diligence, to know of the injury or its cause." Glenbrook Leasing Co. v. Beausang, 839 A.2d 437, 441 (Pa. Super. Ct. 2003) (citing Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger, 674 A.2d 244, 246-47 (Pa. Super. Ct. 1996)). Where "reasonable minds would not differ in finding that party knew or should have known on the exercise of reasonable diligence of his injury and its cause," the court should hold the discovery rule inapplicable as a matter of law.  Fine, 870 A.2d at 858-59 (citing Pocono International Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983)).  Under the objective reasonable diligence test, "a party's actions are evaluated to determine whether [she] exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others.'"  Id. at 858 (quoting Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000)).  The test is "sufficiently flexible . . . to take into account the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question."  Id. (quoting Crouse, 745 A.2d at 611).

The alleged injury caused by Katsock's failure to provide proper professional services is economic: the difference between the value Plaintiff realized from the sale and the amount she would have realized had it not been for the alleged misconduct (Compl. ¶ 63), and the tax consequences of the Annuity Agreement.  (See id. ¶¶ 68, 185(d), 186.)  Katsock argues that reasonable diligence requires an inquiry into the value of property prior to selling it; therefore, Plaintiff should have known of her injury at the time of the transaction.  Plaintiff counters that the financial injury arising from Katsock's misconduct was not ascertainable with reasonable diligence because the "dynamics of an annuitized transaction are not necessarily obvious to even a . . . seasoned business person." (Pl.'s Opp. Br. Katsock Mot. Dismiss at 14.)  Plaintiff also argues that the continuing services

15

provided by Katsock, as well as Plaintiff's age, inexperience in business, education level, and illness, rendered her unable to discover the injury.

Although Plaintiff's injury and its cause might well have been discoverable under ordinary circumstances, the special relationship between a professional and his client alters the Court's analysis of what constitutes reasonable diligence.  Reliance on professional opinion may relax a reasonable person's vigilance as to the protection of her own interest.  See Burnside v. Abbot Labs., 505 A.2d 973, 990 (Pa. Super. Ct. 1985) (holding that it was error to determine as a matter of law that plaintiff knew or should have known of the cause of her injury where plaintiff accepted and relied upon the opinions of "two trusted physicians" regarding cause of illness); Lujan v. Mansmann, 956 F. Supp. 1218, 1226 (E.D. Pa.1997) (noting that patients are reluctant to question the propriety of psychiatric treatment and thus may not discover psychological injury); cf. Mushroom Transp. Co. v. Ganz (In re: Mushroom Transp. Co.), 382 F.2d 325, 341-43 (3d Cir. 2004) (holding that the existence of a fiduciary relationship is relevant to the Pennsylvania discovery rule/reasonable diligence analysis).  Katsock continued to provide services with respect to the Annuity Agreement at least through 2003.  (Compl. Ex. S-1.)  The Complaint alleges that the relationship between Plaintiff and Katsock was a fiduciary one.  (Id. ¶ 188.)  These allegations are consistent with Plaintiff's argument that she relied upon the advice of her accountant in financial matters and had no reason to suspect that the Annuity Agreement was detrimental to her until the Parking Lot Property was resold to a third party in 2004.  (See id. ¶¶ 82-95.)  In such a situation, the "presumptive level of trust" inherent in the relationship may require "a 'smoking gun'" to  awaken an inquiry into the propriety of a professional's services.  See Mushroom Transp. Co., 382 F.2d at 343 (referring to the effect of the fiduciary relationship on reasonable diligence).  Based on the

16

allegations contained in the Complaint, and drawing all inferences in the light most favorable to the Plaintiff, the Court cannot conclude that all reasonable minds would find that Plaintiff knew or should have known on the exercise of reasonable diligence of her injury.

As the Court has determined that the discovery rule may be applicable, "[t]he question of when a plaintiff 'should have known on the exercise of reasonable diligence of [her] injury and its cause' is a question for the jury." Wawrzynek v. Statprobe, Inc., No. Civ. A. 05-1342, 2005 WL 2175176 (E.D. Pa. Sept. 2, 2005) (quoting Fine, 870 A.2d at 859). Defendant Katsock argues that Plaintiff had "sufficient critical facts to put her on notice" of any injury stemming from the tax ramifications of the 2000 sale by at least the year 2001, when her income tax returns were filed. (See Compl. Ex. S.) However, the Complaint does not allege that Plaintiff signed or even saw her income tax forms; the attached 2000 return is signed only by Katsock, her tax preparer. (See id.) The Court cannot conclude from the Complaint and its attachments that the Plaintiff knew or should have known of the injury at that time. Determination of the timing of the accrual of the claim is inappropriate at this stage of the proceedings. The Court thus declines to dismiss any portion of Plaintiff's Twelfth and Thirteenth Claims for Relief as time-barred.

IV.   THE ANGSTADT DEFENDANTS' MOTION TO DISMISS

Plaintiff brings the following state-law claims against the Angstadt Defendants: negligence (Eighth Claim for Relief); breach of warranty (Ninth Claim for Relief); breach of fiduciary duty (Tenth Claim for Relief); and breach of contract (Eleventh Claim for Relief).[5] The Angstadt Defendants move to dismiss all claims brought against them as time-barred. Additionally, they

---

[5]Attorney Angstadt is also mentioned in the headings of Plaintiff's First and Fourth Claims for Relief. These claims refer to the actions of Attorney Sudfeld and are clearly inapplicable to the Angstadt Defendants.

move to dismiss Plaintiff's Ninth Claim for Relief because there is no cause of action for breach of warranty in Pennsylvania and the claim is a restatement of her Eleventh Claim for Relief for breach of contract.

      A.    <u>Statute of Limitations</u>

Plaintiff's Eighth, Ninth, Tenth, and Eleventh Claims for Relief arise out of Attorney Angstadt's conduct with respect to the original Annuity Agreement.  All of these claims allege that Angstadt represented the interests of Torinas in the formation and execution of the Annuity Agreement, thereby breaching his duty to Plaintiff, a former client. (Compl. ¶¶ 160(a), 165-66, 171.) In her Eighth Claim for Relief, Plaintiff also alleges that Angstadt was negligent by engaging in unethical billing practices. (<u>Id.</u> ¶ 160(b).)  The Angstadt Defendants argue that the claims are time-barred because the complained-of actions occurred no later than May 11, 2000 (the date of the consummation of the Annuity Agreement).  However, the Court has already determined that the discovery rule may delay the accrual of Plaintiff's claims based on an injury arising from the Annuity Agreement, because the Complaint sufficiently alleges that Plaintiff did not know nor should have known of her injury at that time.

The Angstadt Defendants dispute the application of the discovery rule.  They argue that Plaintiff had knowledge of sufficient facts to ascertain that there was a breach of duty at the time of the transaction.  Plaintiff knew, from both the agreement of sale and the mortgage documents, that Attorney Angstadt was representing the Torinas with respect to the Annuity Agreement.  (<u>See</u> Compl. Exs. I, L.) Yet Plaintiff has alleged that she was unable to discover her *injury* at the time of the transaction due to her reasonable reliance on the professional opinion of her accountant.  <u>See</u> <u>Glenbrook Leasing Co.</u>, 839 A.2d at 441 ("[T]he equitable discovery rule . . . will be applied when

the injured party is unable, despite the exercise of due diligence, to know of the injury *or* its cause."
(emphasis added) (citing Robbins & Seventko Orthopedic Surgeons, 674 A.2d at 246)).   While the
Complaint does not allege that Angstadt concealed any information from Plaintiff subsequent to the
consummation of the Annuity Agreement, the application of the discovery rule does not depend on
the conduct of the defendant, but on the ability of the plaintiff to ascertain her injury and its cause.
See Burnside, 505 A.2d at 990 (holding that the discovery rule may be applicable in lawsuit against
pharmaceutical manufacturer where plaintiff relied upon her physicians' assurances that the
pharmaceutical was not the cause of injury).   Therefore, the Court declines to dismiss Plaintiff's
claims against the Angstadt Defendants on statute of limitations grounds.

       B.     Breach of Warranty

       In her Ninth Claim for Relief, Plaintiff alleges that Attorney Angstadt breached an implied
warranty of good and workmanlike legal services and an express warranty of competence and skill
by neglecting his duty of loyalty to Plaintiff, a former client.   Defendant argues that there is no cause
of action for a breach of warranty in Pennsylvania and that this claim is repetitive of Plaintiff's
Eleventh Claim for Relief (breach of contract).[6]   As discussed in Part II.B, a claim based on a breach
of an express or implied warranty is cognizable as a breach of contract claim in legal malpractice
actions.   The Court agrees, however, that Plaintiff's claims for breach of contract and breach of
warranty state identical causes of action because there is no legal difference between them.   Both
claims are based on a contractual theory of relief.   The two claims allege the same breach of the
professional duty of loyalty.   The two claims allege that the breach arose from the same course of
conduct: Angstadt's representation of clients with interests that were materially adverse to those of

---

      [6]Plaintiff did not respond to this argument.

Plaintiff, his former client.  For these reasons, the Court dismisses Plaintiff's Ninth Claim for Relief as redundant.

V.       CONCLUSION

For the foregoing reasons, the Court grants the Sudfeld Defendants' Motion to Dismiss with respect to Plaintiff's Sixth Claim for Relief for outrageous conduct.  It denies the Motion with respect to Plaintiff's Second, Third, Fourth, Fifth, and Seventh Claims for Relief.  The Court grants Katsock's Motion to Dismiss with respect to Plaintiff's Fourteenth Claim for Relief for outrageous conduct.  It denies the Motion with respect to Plaintiff's Twelfth, Thirteenth, and Fifteenth Claims for Relief.  The Court grants the Angstadt Defendants' Motion to Dismiss with respect to Plaintiff's Ninth Claim for Relief for breach of warranty.  It denies the Motion with respect to Plaintiff's Eighth, Tenth, and Eleventh Claims for Relief.[7]

An appropriate order follows.

---

[7]In light of the Court's disposition of this Motion, the following claims remain: Plaintiff's negligence claim against the Sudfeld Defendants; Plaintiff's breach of contract claim against the Sudfeld Defendants; Plaintiff's breach of warranty claim against the Sudfeld Defendants; Plaintiff's breach of fiduciary duty claim against the Sudfeld Defendants; Plaintiff's unjust enrichment claim against the Sudfeld Defendants; Plaintiff's fraud claim against the Sudfeld Defendants; Plaintiff's negligence claim against Katsock; Plaintiff's breach of fiduciary duty claim against Katsock; Plaintiff's unjust enrichment claim against Katsock; Plaintiff's negligence claim against the Angstadt Defendants; Plaintiff's breach of fiduciary duty claim against the Angstadt Defendants; Plaintiff's breach of contract claim against the Angstadt Defendants.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DIANA R. MEYERS                    :              CIVIL ACTION
                                   :
                                   :
        v.                         :
                                   :
                                   :
HERBERT K. SUDFELD, et al.         :              No.  05-2970

## O R D E R

**AND NOW**, this 21st day of February, 2006, upon consideration of the Sudfeld Defendants'
Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. No. 21), Defendant Katsock's Motion to Dismiss
Pursuant to Rule 12(b)(6) (Doc. No. 25), the Angstadt Defendants' Motion to Dismiss Pursuant to
Rule 12(b)(6) (Doc. No.  22), Plaintiff's responses thereto, and the hearing held on January 4, 2006,
**IT IS HEREBY ORDERED** as follows:

1.      The Sudfeld Defendants' Motion to Dismiss (Doc. No. 21) is **GRANTED in part**
        and **DENIED in part**.  The Motion is **GRANTED** with respect to Plaintiff's Sixth
        Claim for Relief for outrageous conduct and this claim is **DISMISSED**.  The Motion
        is **DENIED**  in all other respects.

2.      Defendant Katsock's Motion to Dismiss (Doc. No. 25) is **GRANTED in part** and
        **DENIED in part**.  The Motion is **GRANTED** with respect to Plaintiff's Fourteenth
        Claim for Relief for outrageous conduct and this claim is **DISMISSED**.  The Motion
        is **DENIED** in all other respects.

3.      The Angstadt Defendants' Motion to Dismiss (Doc. No. 22) is **GRANTED in part**
        **and DENIED in part**.  The Motion is **GRANTED** with respect to Plaintiff's Ninth
        Claim for Relief for breach of warranty and this claim is **DISMISSED**.  The Motion

is **DENIED** in all other respects.

BY THE COURT:


  s/ John R. Padova
John R. Padova, J.