IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DIANA R. MEYERS                    :              CIVIL ACTION
                                   :
                                   :
        v.                         :
                                   :
                                   :
                                   :
HERBERT K. SUDFELD, JR., ESQ., ET AL    :          NO. 05-CV-2970


**MEMORANDUM**

**Padova, J.**                                     **February    , 2007**

        Plaintiff Diana R. Meyers, ("Meyers") brought this action alleging legal malpractice, breach

of contract, breach of warranty, breach of fiduciary duty; unjust enrichment, emotional distress, and

fraud, arising from the transfer of property in New Hope, Pennsylvania.  Defendants, Herbert K.

Sudfeld, Jr., Esquire, his current law firm, Fox Rothschild, LLP, and his former law firm, Power,

Bowen & Valimont, LLP (collectively "Sudfeld") have moved for summary judgment.  Also before

the Court are the Defendants' motions in limine to exclude punitive damages and to exclude

evidence regarding Meyers' health.  For the reasons that follow, the summary judgment motion is

granted in part and denied in part,[1] the motion to exclude punitive damages is granted, and the

_____

        [1]Meyers indicates in her brief that she will voluntarily withdraw Count 3 (her breach of
warranty claim), and Count 5 (her unjust enrichment claim).  (Brief at 25, 27.)  Accordingly,
Sudfeld's summary judgment motion is granted as to these claims.  Meyers also concedes that an
emotional distress claim is not appropriate in this case (Brief at 31-32), even though her claim for
outrageous conduct due to the infliction of emotional distress was previously dismissed.

motion to exclude evidence of Meyers' health is denied.

## I.  BACKGROUND AND FACTS

Plaintiff, Diana Meyers, was married to Francis John Meyers ("Mr. Meyers") on January 16, 1968.  (Compl. ¶ 22; Affidavit of Diana Meyers in Support of Plaintiff's Brief in Opposition to Motion for Summary Judgment ("Meyers Affidavit") ¶ 2.)  Mr. Meyers owned various business interests, including real property in New Hope, Pennsylvania ("the Canal House Property").  The Canal House Property consisted of a restaurant/lounge operated by Mr. Meyers ("the Canal House Restaurant"), apartment units, and commercial rental space.  (Compl. ¶¶ 24-25; Meyers Affidavit ¶ 5.)

Plaintiff claims she was not involved in her husband's business decisions.  (Compl. ¶ 29; Meyers Affidavit. ¶ 5.)  However, Meyers began working at the Canal House as a waitress in 1955 or 1956.  (SOF ¶ 16.)  During her thirty years working at the restaurant, she often signed checks to pay utility bills.  (SOF ¶ 19.)  She was also a shareholder in the corporation that owned the restaurant.  (SOF ¶ 20.)  She and Mr. Meyers jointly owned 90% of the shares.  (SOF ¶ 21.)

Meyers acknowledged that she has signed numerous agreements, corporate documents, deeds, and Wills without reading them, including the documents at issue in this suit.  (SOF ¶¶ 22, 26-68, 78, 97, 114, 161.)  She stated in her deposition that "I don't read documents unfortunately. I don't understand them and I don't read them."  (SOF ¶ 23.)

After Mr. Meyers learned that he had terminal cancer, he reunited with his previously estranged granddaughter, Karen Torina ("Mrs. Torina").  (Meyers Affidavit ¶ 6.)  Prior to his death, Mr. Meyers and Mrs. Meyers met with Attorney Sudfeld, at which meeting Sudfeld agreed that he would "look after" Plaintiff after Mr. Meyers's death.  (Compl. ¶ 35; Meyers Affidavit ¶ 7.)  At the

insistence of Mrs. Torina, Mr. Meyers and Plaintiff also met with attorney Edwin Angstadt to draft their wills and related documents. (Compl. ¶ 36; Meyers Affidavit ¶ 8, Defendant's Statement of Material Facts ("SOF") ¶ 69-72.) Meyers understood that her will left her estate to Mrs. Torina and her husband Ciro Torina (collectively "the Torinas").

Mr. Meyers passed away in June 1998, and Plaintiff was named Executrix of his estate. (Compl. ¶¶ 30, 38-39.) Meyers received from the estate, among other things, the Canal House Property, a nearby parcel of land referred to as "the Parking Lot Property," and a third parcel known as "the Towpath Property." (Id. ¶ 42.) In 1998, Meyers executed a durable Power of Attorney, naming Sudfeld her attorney-in-fact. (Meyers Affidavit ¶ 20; SOF ¶ 99; Pl.'s Ex. B.) She admits that, although she discussed the Power of Attorney with Sudfeld, she never read it. (SOF ¶ 100.) She recalled that Sudfeld asked her if she understood it, to which she responded "yes, which of course I didn't, but I said yes." (SOF ¶ 102.) The Power of Attorney gave Sudfeld the power to write checks to pay debts, take out and satisfy mortgages, transfer real estate, sign deeds, transact all business with regard to realty, settle claims, and bind Meyers to agreements which in his opinion were in her best interests. (Pl.'s Ex. B.; SOF ¶ 103.) Sudfeld's Power of Attorney had no specific expiration, (Pl.'s Ex. B. at 6; SOF ¶ 104), and by its terms, released Sudfeld from any liability by reasons of any decisions, acts or failures to act that he should make, except for malfeasance. (Pl.'s Ex. B. at 6; SOF ¶ 105.)

Plaintiff relocated from Bucks County to Colorado shortly after her husband's death. (Compl. ¶ 44; Meyers Affidavit ¶ 10.) In late 1999, while Meyers was undergoing treatment for uterine cancer, the Torinas offered to purchase her interest in the Canal House (both the real estate and the restaurant business), the Parking Lot Property and the Tow Path Property. (Compl. ¶¶ 43-45,

47; Meyers Affidavit ¶¶ 11, 14.) Meyers avers that she was represented by Sudfeld in the negotiation of an Agreement for Sale dated December 31, 1999, an Addendum to Agreement of Sale (the "Annuity Agreement") dated December 31, 1999, and in the preparation of the resulting Deed, Mortgage, and Promissory Note, dated May 11, 2000.[2] (Meyers Affidavit ¶¶ 11-12.) Angstadt, who had drafted Mr. and Mrs. Meyers' wills, and settled Mr. Meyers' estate, represented the Torinas in the transaction. Meyers asserts that Sudfeld, upon whose legal counsel she relied, never advised her that Angstadt had any conflict of interest in his representation of the Torinas. (Meyers Affidavit ¶ 13.) Further, she asserts that Sudfeld never secured a copy of the appraisal of the properties prepared by the bank that financed the Torinas' purchase. (Compl. ¶ 62; Meyers Affidavit ¶ 15.) Meyers maintains that Sudfeld did not provide any significant legal input pertaining to the legal implications of the transaction. (Meyers Affidavit ¶ 14.)

Meyers avers that a value of $750,000.00 was placed on the Canal House and Parking Lot in the Agreement of Sale. (Meyers Affidavit ¶ 15.)[3] The properties were appraised in May 2000 to be worth $1,010,000.00. (Meyers Affidavit ¶ 15; SOF ¶ 238.)[4] Meyers was to receive as consideration for the sale the satisfaction of an approximately $100,000.00 mortgage, and an annuity of $4,500.00 per month for life, with a minimum guaranteed payment of $650,000.00. (SOF ¶ 5.)[5]

---

[2]The Mortgage and Promissory Note secured Meyers' right to receive the annuity payments under the Annuity Agreement.

[3]The Agreement of Sale does not, however, state this. Rather, the Annuity Agreement provides that the minimum purchase price to be paid for the real estate and business is $750,000.00.

[4]This figure does not include the Towpath Property, which was appraised by Meyers' expert at $75,000.00. (SOF ¶ 239.)

[5]In 2002, the amount of the monthly checks temporarily increased to $6,000.00, based on an oral agreement between Meyers and the Torinas. (SOF ¶ 176.) Karen Torina stated the increase was

Meyers asserts that the value of the property far exceeded the value of the lifetime annuity she was to receive in consideration of transferring the assets.  (Meyers Affidavit ¶ 15.)

In 2001, the Torinas wished to modify the Annuity Agreement; the debt was amended, and a new promissory note and mortgage were executed.  (Compl. ¶ 71; Meyers Affidavit ¶ 16; Ex. P.) Sudfeld provided legal counsel to Plaintiff pertaining to the modification of the Agreement, however the Torinas paid his fee.  (Meyers Affidavit ¶ 16.)  The modification eliminated the $650,000.00 minimum payment due under the original Promissory Note.  (Id.)  According to Meyers, Sudfeld never advised her to object to the transaction and never attempted to advise her that having the Torinas pay his fee was a conflict of interest.  (Meyers Affidavit ¶ 16.)  However, Meyers admitted in her deposition that she told Karen Torina in January 2001, that, in the event she died, the Torinas did not have to pay the $650,000.00 minimum payment.  (SOF 166.)  She agreed to the modification to drop the minimum payment because it would not make any difference as it would only apply if she died.  (SOF ¶ 168.)  She admitted in her deposition that, in hindsight, the $650,000.00 minimum annuity term was a good idea.  (SOF ¶ 156.)

The Torinas later decided to sell the Canal House Property and the Parking Lot Property. (Compl. ¶¶ 82-83; Meyers Affidavit ¶ 17.)  In September 2004, the Torinas agreed to sell the Parking Lot Property to a third party.  (Id.)  Sudfeld represented Plaintiff's interests as mortgagee in this transaction, but did not secure in advance a copy of the sale agreement between the Torinas and their buyer.  (Id.)  Sudfeld told Meyers that she would receive $150,000 for the release of her security interest and had no ability to stop the sale.  Meyers states she authorized the sale of the Parking Lot

temporary and due to Meyers having to pay expenses pertaining to her son's criminal case.  (SOF ¶ 179.)

Property in late September 2004, but immediately changed her mind and retracted her authority; the sale went through anyway. (Meyers Affidavit ¶ 18; SOF ¶ 190-193.) Thereafter, Meyers terminated Sudfeld's services and revoked the Power of Attorney she executed in 1998. (Meyers Affidavit ¶ 20; SOF ¶ 201.)

In January 2005, the Canal House property was also sold, with Meyers receiving $560,000.00. (Meyers Affidavit ¶ 21.) Meyers asserts she accepted the payment because she was in a very vulnerable cash flow position and because she had a duty to minimize her damages resulting from Sudfeld's negligence. (Id.) She claims she did not suspect that Sudfeld had failed to properly represent her interests until September 2004, when the Parking Lot was sold and she received only $150,000.00 in satisfaction of her interest. (Meyers Affidavit ¶ 24.)

By the time of the Canal House property sale in 2005, Meyers was represented by new counsel. (SOF ¶ 215.) Prior to the closing of the sale, various proposals for the consideration to be paid to Meyers were discussed. The Torinas' attorney suggested continuing the annuity of $4,500.00 per month, with Meyers returning the $150,000.00 payment, effectively returning to the status quo ante the Parking Lot sale. (SOF ¶¶ 224-225.) Meyers' new counsel suggested a lump sum payment of $670,000.00 in addition to the $150,000.00 previously paid. (SOF ¶ 227.) Thereafter, the Torinas proposed three alternatives: (a) Meyers could keep the $150,000.00 and receive $4,500.00 per month for eight years to be followed by $3,500.00 per month for the rest of her life; (b) the lump sum pay off amount would be increased to $610,000.00 from the previously agreed $560,000.00, so that after deduction of the previous payment Meyers would net an additional $448,000.00; and (c) Meyers could return the $150,000.00 and receive payments of $4,500.00 for the rest of her life. (SOF ¶¶ 228-232.)

These proposals were ultimately rejected, and the parties agreed to a pay off amount of

$556,500.00, in addition to the $150,000.00 previously paid.  (SOF ¶¶ 235-236.)  Thus, Meyers

received total consideration of $1,094,500.00.  This total figure includes:

|   |   |   |
|---|---|---|
| a. | Pay off of the existing mortgage: | $100,000.00 |
| b. | Total annuity payments received | 288,000.00 |
| c. | Proceeds from sale of Parking Lot | 150,000.00 |
| d. | Proceeds from sale of Canal House | 556,500.00 |
|   | TOTAL | $1,094,500.00 |

(SOF ¶ 241.)[6]  As stated above, the properties were appraised in May 2000 at $1,010,000.00.

(Meyers Affidavit ¶ 15; SOF ¶ 238.)  Meyers has submitted an additional appraisal completed on

September 29, 2006, appraising the properties as of May 11, 2000 as follows:

|   |   |   |
|---|---|---|
| a. | Canal House Property | $1,170,000.00 |
| b. | Parking Lot Property | 325,000.00 |
| c. | Tow Path Property | 75,000.00 |
|   | TOTAL | $1,570,000.00 |

On her 2001 tax return, Meyers treated the monthly payments she received from the Torinas as

"rent."   On her 2002 and 2003 returns she treated the monthly payments as annuity payments.

Meyers' 2004 and 2005 returns do not reflect the lump sum payments she received in those years.

(SOF ¶ 249-252.)  Meyers employed professional tax preparers to prepare and file those returns.

(SOF ¶¶ 249, 251.)

Also of record is the Plaintiff's expert report, prepared by Clifford B. Cohn, Esquire.  He

---

[6]In addition, the Torinas claim they compensated Meyers by:
> a. paying Meyers' health insurance from 1999 to November 2004, whose premiums totaled $32,764.00 (SOF ¶ 242);
> b. posting their property as collateral for a bail bond for Meyers' son (SOF ¶ 243); and
> c.  taking out life insurance on themselves with Meyers as beneficiary, whose premiums totaled $21,240.00.  (SOF ¶ 244.)

opines that Sudfeld engaged in conduct that fell below required professional standards in several respects.  He states that Sudfeld breached his standard of care by:  (1) engaging in simultaneous representation of both Meyers and the Torinas; (2) failing to obtain the bank appraisal prior to the original transaction; (3) failing to advise Meyers of the tax implications of the transactions or advising her to seek such advice if he himself was not competent to give it; and (4) failing to advise Meyers that Attorney Angstadt was conflicted due to his prior representation of the Plaintiff.  (Pl.'s Ex. A at 6-7.)

## II.    LEGAL STANDARD

A Court may grant a Motion for Summary Judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact."  Boykins v. Lucent Technologies,

Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000).  Indeed, evidence introduced to defeat or support a motion for summary judgment must be capable of being admissible at trial.  Callahan v. A.E.V., Inc., 182 F.3d 237, 252 n.11 (3d Cir. 1999) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993)).  The Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

## III.    SUDFELD'S SUMMARY JUDGMENT MOTION

### A. Elements of a Legal Malpractice Claim

Under Pennsylvania law, the elements a plaintiff must demonstrate in order to establish a claim of legal malpractice are:  1) employment of the attorney or other basis for a duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff.  Myers v. Robert Lewis Seigle, P.C., 751 A.2d 1182, 1184 (Pa. Super. 2000).  The acts constituting alleged legal malpractice pled in the complaint against Sudfeld are:

1.  He failed to meet the standard of care pertaining to the 1999 Agreement of Sale and Annuity Agreement by failing to secure a copy of the appraisal of the properties and by failing to investigate the tax ramifications of the transaction.  (Compl. ¶ 113a.)

2.  He represented the interests of multiple conflicting parties in the original transaction and in the sale of the Parking Lot in 2004, without advising Meyers of the conflict and obtaining a knowing waiver.  (Compl. ¶ 113b.)

3.  He engaged in unethical billing practices.  (Compl. ¶ 113c.)

4.  He improperly advised Meyers of her legal alternatives and the consequences of those alternatives, as to the original transaction and the 2004 Parking Lot transaction.  (Compl. ¶

113d.)

5.  He used unethical tactics to coerce Meyers into consummating the 2004 Parking Lot

transaction.  (Compl. ¶ 113e.)

6.  He failed to provide Meyers with copies of legal and billing files.  (Compl. ¶ 113f.)

7.  He failed to inform Meyers of any conflict that Attorney Angstadt had in representing the

Torinas in the original transaction arising from Angstadt's prior representation of Meyers in

drawing her will and in settling her husband's estate.  (Compl. ¶ 113g.)

Meyers asserts that, as a proximate result of Sudfeld's negligence, she suffered substantial injuries.

B.  Contributory Negligence

Sudfeld argues that Meyers' contributory negligence bars her legal malpractice claims.  He

cites three bases for his argument: (1) Meyers admitted she did not read the 1999 Parking Lot Sale

Agreement and the Annuity Agreement; (2) she agreed with Karen Torina, and without consulting

counsel, to remove the minimum payment requirement; and (3) she actually consented to the

Agreements.

Pennsylvania is a contributory negligence state, not a comparative negligence state.  Gorski

v. Smith, 812 A.2d 683, 700 (Pa. Super 2002).  In Gorski, the court held that "the negligence of a

client may be raised as an affirmative defense by an attorney in a legal malpractice action that is

based on a theory of negligence."  Contributory negligence, which is "conduct on the part of a

plaintiff which falls below the standard [of care] to which [s]he should conform for [her] own

protection and which is a legally contributing cause, cooperating with the negligence of the

defendant, in bringing about the plaintiff's harm," has been applied where the client "has withheld

or misrepresented information that is essential to the attorney's representation of the client," in

instances where "the client has chosen to disregard the legal advice which the attorney provided to the client," and where the client has "violated the instructions of the attorney." Id. at 703.  However, because the client hires the attorney to guard her legal interests, "as a matter of law, a client cannot be deemed contributorily negligent for failing to anticipate or guard against his or her attorney's negligence in the performance of legal services within the scope of the attorney's representation of the client." Id.

Construing the evidence in the light most favorable to Meyers, Sudfeld has not established that Meyers withheld or misrepresented information, disregarded his legal advice, or violated his instructions, so as to establish contributory negligence as a matter of law.  While it is not seriously disputed that Meyers signed the Agreements without reading them, she did so in reliance on her attorney's protecting her legal interests in preparing and negotiating the Agreements.  Sudfeld was to "look after" Plaintiff after Mr. Meyers's death, and was not only her attorney-at-law, but also her attorney-in-fact.  Thus, it was *his* duty to read the contracts in order to protect her interests.  While Sudfeld argues that it is clear under Pennsylvania law that one who signs a contract has a duty to read it first, see Schillachi v. Flying Dutchman Motorcycle Club, 751 F. Supp. 1169 (E.D. Pa. 1990) ("where a person sought to be bound by a writing has carelessly signed such writing without reading it, the court should not relieve such person from the results of his own gross negligence"), that decision is inapposite to a legal malpractice action.  Sudfeld has cited no other authority to support his argument that his client was not entitled to rely on the negotiations he conducted as her attorney-in-fact and the advice he provided (or failed to provide) as her attorney-at-law, and was required to independently read the contracts that the attorney had prepared.

Sudfeld also argues that Meyers was contributorily negligent in orally agreeing to modify the

original Annuity Agreement to eliminate the minimum payment.  We find there are disputed issues of fact precluding summary judgment in this regard.  While Meyers admitted in her deposition that she told Karen Torina in January 2001, that, in the event she died, the Torinas did not have to pay the $650,000.00 minimum payment, and that she agreed to the modification to drop the minimum payment because it would not make any difference as it would only apply if she died, it is also undisputed that Sudfeld provided legal counsel to Plaintiff pertaining to the modification of the Annuity Agreement, and that the Torinas paid his fee.  The bases of Meyers' claim in this regard are that Sudfeld never advised her to object to the transaction and never attempted to advise her that having the Torinas pay his fee was a conflict of interest.

Sudfeld has not established as a matter of law that Meyers was contributorily negligent based upon her withholding or misrepresenting information, disregarding his legal advice, or violating his instructions with regard to the modification of the Annuity Agreement.  There is no evidence that Meyers withheld the fact that she negotiated with Torina.  The fact that she agreed to modify the Annuity Agreement could not be a "disregard" of Sudfeld's advice or a violation of his instructions, since he does not assert that he ever advised her not to modify that Agreement or that she did so in violation of his advice.

Finally, the fact that Meyers actually consented to the various Agreements cannot be contributory negligence as a matter of law.  As quoted above, Gorsky specifically held that "as a matter of law, a client cannot be deemed contributorily negligent for failing to anticipate or guard against his or her attorney's negligence in the performance of legal services within the scope of the attorney's representation of the client." 812 A.2d at 703.  Negotiating the terms of the Agreements was indisputably within the scope of Sudfeld's representation.  The fact that Meyers agreed to the

terms she negotiated without her counsel did not relieve counsel of his obligation to exercise ordinary skill and knowledge in advising her that the modification of the Annuity Agreement was against her interests.  Accordingly, we reject Sudfeld's contributory negligence arguments.

     C.  <u>Statute of limitations</u>

The Agreement of Sale and the Addendum were signed in December 1999.  The Deed, Mortgage and Promissory Note were signed in May 2000.  The Modification to the Annuity Agreement was executed in 2001.  The Torinas' sale of the Canal House and Parking Lot occurred in September 2004 and January 2005, respectively.  Meyers filed suit on June 20, 2005.  The statute of limitations for legal malpractice claims in Pennsylvania is two years.  42 Pa. Cons. Stat. Ann. § 5524(7).  Accordingly, any legal malpractice claim regarding Sudfeld's representation in 1999, 2000 and 2001  would be untimely unless Myers is entitled to have the statute of limitations tolled.

In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises.  <u>Fine v. Checio</u>, 870 A.2d 850, 857 (Pa. 2005).  <u>See also</u> <u>Garcia v. Community Legal Services Corp.</u>, 524 A.2d 980, 986 (Pa. Super. 1987) (stating that the statute of limitations for malpractice begins to run "when the alleged breach of duty occurs.  It is tolled only until the injured party should reasonably have learned of this breach."); <u>Fiorentino v. Rapoport</u>, 693 A.2d 208, 220 (Pa. Super.1997) ("In Pennsylvania, the occurrence rule is used to determine when the statute of limitations begins to run. Under the Pennsylvania occurrence rule, the statutory period commences when the harm is suffered, or if appropriate, at the time an alleged malpractice is discovered."); <u>Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger</u>, 674 A.2d 244, 247 (Pa. Super. 1996) (same); <u>Glenbrook Leasing Co. v. Beausang</u>, 61 Pa. D & C 4th 449, 455-6 (Del.

Co.), aff'd, 839 A.2d 437 (Pa. Super. 2003) (stating that the statute of limitations begins to accrue "upon the happening of the alleged breach of duty," but the statute may be tolled by "the equitable discovery rule which is applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause.").

For a malpractice claim, the discovery rule operates when "the injury or its cause was neither known nor reasonably knowable." Fine, 870 A.2d at 858. "The salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause. . . . [R]easonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." Id. (internal citations omitted). In determining whether the discovery rules applies, courts "must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. . . . Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it." Id. (internal citations omitted).

Sudfeld argues all of Plaintiff's claims regarding legal representation prior to the 2004 representation concerning the Parking Lot sale are time barred. He asserts that Meyers had notice of the facts necessary to support her claims regarding the 1999, 2000 and 2001 transactions prior to June 2003, i.e. two years before suit was started, making any claim based on those transactions untimely. According to Sudfeld, Meyers admitted she was aware of the terms of the original transactions more than two years before suit was started, since she agreed to them with the Torinas before Sudfeld was brought into the matter. Sudfeld also argues that, to the extent her claims are based on the tax treatment of the Annuity Transaction, they are time barred because Meyers' own

-14-

tax returns for 2001, 2002 and 2003 clearly showed the methods in which she treated the monthly payments. Meyers responds that it was not until the fall of 2004 – when the Torinas decided to sell the Canal House and Parking Lot properties and she learned she would only receive $150,000.00 – that she had any idea that Sudfeld's representation in negotiating the original contracts was improper.

We find that the claims based upon Sudfeld's failure to advise Meyers of Attorney Angstadt's alleged conflict of interest are untimely. It is undisputed that Meyers was aware of all facts concerning Angstadt's role in the drafting of her will, the settling of her husband's estate, and his subsequent representation of the Torinas in the original transaction. "When information is available, the failure of a plaintiff to make the proper inquiries is failure to exercise reasonable diligence as a matter of law." Kingston Coal Co. v. Felton Min. Co., Inc., 690 A.2d 284, 289 (Pa. Super. 1997) (quoting Colonna v. Rice, 664 A.2d 979, 981 (Pa. Super 1995)). Further, "[t]he standard of reasonable diligence is an objective or external one that is the same for all individuals. It is not a subjective standard." Id. That Meyers was elderly, ill and located in Colorado is, thus, immaterial to whether she exercised reasonable diligence. Her failure to use reasonable diligence to ascertain that she had been injured by Sudfeld's failure to advise her of Angstadt's conflicting representation is clear from the record and bars this aspect of her malpractice claim.

Sudfeld also argues that the claim that he failed to adequately and completely investigate the tax ramifications of the Annuity Agreement is also untimely because Meyers' tax returns clearly show that she had knowledge of how she was treating the monthly payments before the statute of limitations expired. Again, we agree. Meyers makes no specific argument demonstrating that there are disputed issues of fact concerning her knowledge of her own tax returns at the time she signed and filed them. We find as a matter of law that Meyers' tax returns demonstrate that she failed to

exercise reasonable diligence in timely discovering the facts surrounding Sudfeld's advice concerning the tax treatment of her annuity payments. <u>Accord</u> <u>Pettit v. Smith</u>, Civ. A. No. 98-6706, 1999 WL 1052007 (E.D. Pa. Nov. 19, 1999) (holding that statute of limitations on legal malpractice claim based on attorney's failure to advise plaintiff to file separate tax returns from her husband was not tolled by discovery rule where plaintiff knew or should have known when she signed income tax return with her husband that those returns were being filed jointly).

We cannot conclude as a matter of law that Meyers' claim that Sudfeld failed to secure a copy of the bank's appraisal of the property to determine its actual value prior to the original transaction is time barred. Sudfeld contends that the appraisal claim is untimely because Meyers herself agreed on the terms of the Agreements with Mrs. Torina before they each brought the matter to their attorneys. We find that there is a genuine issue of factual dispute in this regard. Notwithstanding whether or not Meyers agreed to the terms of the property sale Agreement and the Annuity Agreement with Mrs. Torina, there is no evidence on the record of this motion that Meyers was aware that Sudfeld had failed to obtain the bank appraisal when he provided her with legal advice with respect to those agreements, that she independently knew that the properties had been appraised by the Torinas, or that this information was available to her through the exercise of reasonable diligence.

D.  <u>The Power of Attorney</u>

Sudfeld next argues that since he was acting pursuant to a Power of Attorney that, by its terms released him from any liability by reasons of any decisions, acts or failures to act that he should make, except for malfeasance, the validity of which Meyers does not question, he cannot be liable for any claim contained in the Complaint. We find that this argument has no merit.

Sudfeld cites no authority for the proposition that the release contained in the Power of Attorney is effective to release claims arising against him in his capacity as an attorney-at-law, as opposed to his capacity as attorney-in-fact. Nor could such authority exist insofar as the legal malpractice claim is concerned. Pa. R. Professional Conduct 1.8(h)(1) forbids an attorney to "make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement." There is no suggestion that Meyers had independent representation when she consented to the release in the Power of Attorney. As for the other claims asserted against Sudfeld, we find as a matter of law that they are not controlled by the release contained in the Power of Attorney. The breach of contract claim contends that Sudfeld charged unreasonable legal fees, while the breach of fiduciary duty and fraud claims assert that he failed to disclose an alleged conflict of interest. As these claims do not involve actions Sudfeld took as an attorney-in-fact, they cannot be controlled by the Power of Attorney's release language.

E. <u>Breach of Contract</u>

Sudfeld argues that he is entitled to the entry of summary judgment on Plaintiff's breach of contract claim because there was no written contract between the Plaintiff and himself. "Generally speaking, for a plaintiff to successfully maintain a cause of action for breach of contract requires that the plaintiff establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." <u>Gorski</u>, 812 A.2d at 692 (citing <u>Corestates Bank, N.A. v. Cutillo</u>, 723 A.2d 1053, 1058 (Pa. Super. 1999). Where the contract is one between a lawyer and client for the provision of legal services, "there automatically arises a contractual duty on the part of the attorney to render those legal services in a manner that comports with the profession at large. Hence, a breach of contract claim may properly be premised on an

attorney's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large." Gorski at 694 (citing Bailey v. Tucker, 621 A.2d 108, 115 (Pa. 1993).

Meyers has come forward with sufficient evidence to create a jury question on each element of her breach of contract claim. The parties' course of dealings clearly establishes that they had an attorney-client relationship notwithstanding the lack of a written retainer agreement. See Westinghouse Elec. Co. v. Murphy, Inc., 228 A.2d 656, 659 (Pa. 1967) (holding that "if evidence of the contract is not an integrated document, and, moreover, one partly or wholly composed of oral communications, . . . courts must look to surrounding circumstances and the course of dealings between the parties . . . to ascertain the intention of the parties"). Moreover, Meyers' Affidavit and her Expert's Report create a genuine issue of material fact that Sudfeld breached the contract by failing to provide legal services in a manner that comported with the standards of the profession, due to his failure to obtain the appraisal and his dual representation.[7] The Affidavit also provides

---

[7]We note that Meyers also argues that Sudfeld breached his duty, in that he violated Pa. R. Professional Conduct 1.4(b)'s requirement that he reasonably explain to his client the facts and law necessary for Meyers to have made an informed decision regarding his representation. She also makes several other references to the Rules in her Brief. In Maritrans GP, Inc. v. Pepper, Hamilton and Scheetz, 602 A.2d 1277, 1279 (Pa. 1992), the Pennsylvania Supreme Court reaffirmed the principle stated in the Preamble to the Rules of Professional Conduct, that neither the rules, nor the Code of Professional Responsibility previously in effect, per se create a legal cause of action in clients or other private parties for a violation thereof. See Pa. R. Professional Conduct, Preamble ¶ [19] ("Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. . . . The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis of civil liability). See also Molitoris v. Woods, 618 A.2d 985, 990 n.5 (Pa. Super. 1992) (holding that argument that representation agreement was void as against public policy due to violations of Rules was meritless because Rules do not establish per se cause of action). Thus, evidence, standing alone, that Sudfeld violated Rule 1.4(b) cannot establish Meyers' breach of contract or legal malpractice claims.

sufficient evidence  to create an issue for the jury that Meyers was damaged as a result.[8]

F. <u>Breach of Fiduciary Duty</u>

The elements a plaintiff must prove in a claim of breach of fiduciary duty are: "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bringing about plaintiff's injuries." <u>McDermott v. Party City Corp.</u>, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998). Sudfeld asserts that Plaintiff's claim is based solely upon her allegation that he provided simultaneous representation of both Plaintiff and the Torinas and that there is no evidence that he concurrently represented both parties.  Meyers responds that her claim is based on several different breaches of fiduciary duty, including Sudfeld's failure to adequately advise her on each of the agreements she entered into with the Torinas.

We find that Meyers' Complaint cannot be read as narrowly as Sudfeld suggests.  We  also find she has come forward with sufficient evidence to create a genuine issue of material fact for the jury on the issue of dual representation.  The Complaint asserts that the bases of Plaintiff's breach of fiduciary duty claim are based on the following:

(1) Sudfeld's improper representation of Plaintiff in preparing the Annuity Agreement and the Parking Lot sale (Comp. ¶ 129);

---

[8] Sudfeld also argues that the breach of contract claim fails because, while Meyers asserted in her complaint that the basis for the claim was that Sudfeld charged unreasonable fees, her expert did not opine that the fees Sudfeld charged were unreasonable.  We agree that Meyers has come forward with no evidence to show there is a genuine issue for trial on the unreasonableness of Sudfeld's fees.  Accordingly, while the breach of contract claim survives, based on breach of the implied standard of professional service, the motion is granted as to the unreasonable fee claim.

(2) Sudfeld's conflict in his dual representation of Meyers and the Torinas (Compl. ¶ 130); and

(3) Sudfeld's failure to communicate to Meyers that Attorney Angstadt was acting under a conflict of interest in representing the Torinas in the annuity transaction, having previously represented Meyers in the settlement of Mr. Meyers' estate, (Compl. ¶ 131).

Sudfeld argues that he is entitled to the entry of summary judgment because the record demonstrates that: (1) he represented the corporate entity The Canal House, Inc., and did not directly represent the Torinas; (2) he did so with Meyers' knowledge and consent; and (3) at all times subsequent to January 2004, the Torinas and Canal House, Inc. were represented by other counsel. Meyers has explained that this aspect of her claim is based on Sudfeld's actions vis-a-vis the 2002 Modification to the Annuity Agreement. Meyer stated in her Affidavit that Sudfeld did not advise her in writing of his own conflict of interest in having the Torinas pay his fees for representing Meyers in that transaction. Torina testified that she "may have" paid Sudfeld's fees in connection with the modification. (Def. Mem. of Law at 30-31.) Accordingly, we find there is sufficient evidence to go to the jury on the issue of whether Sudfeld breached his fiduciary duty to Plaintiff.[9]

G. Damages

Finally, Sudfeld argues that summary judgment should be entered on his behalf as to each of Plaintiff's claims against him because Meyers has not establish that she was damaged by his conduct. He contends that the record demonstrates that:

_____

[9]Sudfeld argues that the fraud claim fails for the same reasons as the breach of fiduciary duty claim. Accordingly, we find that this argument must be rejected as well and the fraud claim must go to the jury. The failure to advise Meyers that the Torinas paid his fee can serve to satisfy the misrepresentation element of a fraud claim. See Gibbs v. Ernst, 647 A.2d 882, 888 (Pa. 1994) (setting forth elements of fraud claim).

- Meyers and Torina agreed on the terms of all transactions through and including the Parking Lot sale in September 2004;

- He sought to protect Meyers by inserting the minimum payment terms;

- Meyers directed him to remove the minimum payment term;

- Meyers authorized the 2004 Parking Lot sale, but later had a change of heart;

- Meyers' current counsel negotiated the final lump sum payment from the 2004 Parking Lot and 2005 Canal House transactions, rejecting an offer to return to the status quo ante the Parking Lot transaction, and thus he, and not Sudfeld, is responsible for the tax consequences Meyers thereby incurred.

Moreover, Sudfeld argues that Meyers cannot prove that she incurred any damages because the total amount she received for the properties was nearly identical to the appraised value of the properties, including the $75,000.00 appraised value of the Tow Path property.

Meyers agrees that Sudfeld essentially acted as scribe for the transactions, but faults him for thereby abjuring his professional responsibilities to protect his client's interests. She also asserts there is a disputed issue of fact concerning whether it was Sudfeld or the parties themselves that came up with the $750,000.00 valuation contained in the 1999 and 2000 agreements. Meyers also relies on her 2006 appraisal, which valued the properties as of the year 2000 at $1,570,000.00, rather than $1,010,000.00.

It is clear that material issues of fact remain in dispute regarding Meyers' damages. Looking at the evidence in the light most favorable to Meyers, she can demonstrate she sold property worth $1.57 million for only $1,094,500.00. Moreover, there are sharply disputed issues of material fact regarding Sudfeld's role in the transactions. Accordingly, we find that there are genuine issues of

-21-

material fact for the jury on the issue of whether Plaintiff has suffered damages as a result of Sudfeld's activities.

### H.  Conclusions on the Motion for Summary Judgment

Accordingly, the Motion for Summary Judgment is granted as to the claims in Count 1 alleging that Sudfeld failed to advise Meyers of an alleged conflict of interest by Attorney Angstadt and that Sudfeld failed to adequately and completely investigate the tax ramifications of the Annuity Agreement.  The Motion is also granted as to the claim in Count 2 that Sudfeld charged unreasonable attorneys fees, and as to Count 3 (alleging breach of warranty) and Count 5 (alleging unjust enrichment).

## IV.  MOTION IN LIMINE – PUNITIVE DAMAGES

Also before the Court is Sudfeld's motion in limine to exclude any claim for punitive damages.[10]  The Pennsylvania Supreme Court has adopted Section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages.  Rizzo v. Haines, 555 A.2d 58, 69 (Pa. 1989).  That provision permits punitive damages for conduct that is "outrageous because of the defendant's evil motives or his reckless indifference to the rights of others."  Restatement (Second) of Torts § 908(2) (1977).  In Pennsylvania, a court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive.  Rizzo, 555 A.2d at 69 (citing Chambers v. Montgomery, 192 A.2d 355, 358 (1963).  The proper focus is on "the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties. . . ."  Id.

---

[10]We previously dismissed Meyers' separately stated claim for outrageous conduct / intentional infliction of emotional distress, finding that Pennsylvania law does not recognize a separate cause of action for outrageous conduct, and that she had not alleged the required elements of a claim for negligent or intentional infliction of emotional distress.  Meyers v. Sudfeld, No. 05-2970, slip op. at 10-11 (E.D. Pa. Feb. 21, 2006).

In addition, the actor's state of mind is relevant.  The act or omission must be intentional, reckless or malicious.  Feld v. Merriam, 485 A.2d 742 (Pa. 1984).

　　　In Rizzo, the Court found that punitive damages were available on a legal malpractice claim. The attorney had used his position to persuade his client to transfer to the attorney the proceeds of a sanctions order awarded to the client by the trial judge due to the attorney's misconduct.  The attorney secured this transfer after intentionally withholding the judge's findings of misconduct, in order to evade her ruling.  He also told the client that he needed the money to pursue the client's legal claims that proved meritless.  Id. at 507-08.  These breaches of fiduciary duty, intentional withholding of critical information and fraudulent misrepresentation, the Court found, were more than sufficient to justify a punitive damage award.

　　　The actions at issue in this case, even when viewed in the light most favorable to Plaintiff, do not rise to this level of malicious, wanton, reckless, willful, or oppressive behavior.  Meyers asserts that Sudfeld breached his duty of care to properly represent her interests in the transactions. There is no assertion that he stole her property, or otherwise overreached her for his personal gain. Her claim, simply stated, is that Sudfeld gave her bad legal advice.  As there is no assertion that he personally profited from that bad legal advice, or gave that advice for some evil motive, we find as a matter of law that punitive damages are not appropriate.  Accordingly, the motion in limine to exclude evidence of punitive damages is granted.

## V.  MOTION IN LIMINE – EVIDENCE OF MEYER'S EMOTIONAL FRAILTY

　　　Sudfeld also moves in limine to exclude the testimony of Carol Gordon, L.C.S.W., and other evidence concerning Meyers' "emotional frailness," as irrelevant because there is no claim for intentional infliction of emotional distress.  Meyers maintains that testimony regarding her dependent

personality trait, her inability to make decisions regarding difficult issues, and her pathological

difficulty expressing disagreement, is relevant to her diminished capacity and her lack of business

sophistication.  We agree that the evidence may be relevant under Fed. R. Evid. 401 since it tends

to show whether or not Sudfeld properly exercised his duty of reasonable care to protect Meyers'

interests.  Accordingly, the motion in limine is denied.  Of course, admission of the evidence remains

subject to establishing a proper foundation, as well as any other objections raised at trial, and we

express no opinion on whether Ms. Gordon qualifies as an expert to offer opinions on Ms. Meyers'

emotional frailty.

      An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANA R. MEYERS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| HERBERT K. SUDFELD, JR., ESQ., ET AL | : | NO. 05-CV-2970 |

## <u>ORDER</u>

**AND NOW**, this  day of January, 2007, upon consideration of Defendants' Motion for Summary Judgment (Docket Entry # 81) and all papers filed in connection therewith, Defendants' Pre-Trial Motion in Limine to Exclude Punitive Damages (Docket Entry # 92), and Defendant's Pre-Trial Motion in Limine to Exclude the Testimony of Carol Gordon, etc. (Docket Entry # 93), and Plaintiff's Responses thereto, **IT IS HEREBY ORDERED** as follows:

1.     The Motion for Summary Judgment (Docket Entry # 81) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a.     The Motion for Summary Judgment is **GRANTED** as to the claims contained in Count 1 (Negligence) alleging:

        1.     Defendants failed to advise Plaintiff of an alleged conflict of interest by Attorney Angstadt; and

        2.     Defendants failed to adequately and completely investigate the tax ramifications of the Annuity Agreement.

The Motion is **DENIED** in all other respects as to the claims contained in Count 1.

    b.     The Motion for Summary Judgment is **GRANTED** as to Count 2 (Breach of Contract), as to the claim alleging Defendants charged unreasonable attorneys fees.

The Motion is **DENIED** in all other respects as to the claims contained in Count 2.

d.     The Motion for Summary Judgment is **GRANTED** as to Count 3 (Breach of Warranty).

e.     The Motion for Summary Judgment is **GRANTED** as to Count 5 (Unjust Enrichment).

f.     The Motion for Summary Judgment is **DENIED** in all other respects.

**JUDGMENT IS HEREBY ENTERED** in favor of Defendants Herbert K. Sudfeld, Jr., Esq.; Fox, Rothschild LLP.; and Power, Bowen & Valimont LLP; and against Plaintiff Diana R. Meyers ast to the claims in Count 1 alleging that Defendants failed to advise Plaintiff of an alleged conflict of interest by Attorney Angstadt and that Defendants failed to adequately and completely investigate the tax ramifications of the Annuity Agreement; as to the claim in Count 2 alleging Defendants charged unreasonable attorneys fees; and as to Count 3 and Count 5 in their entirety.

2.     Defendants' Pre-Trial Motion in Limine to Exclude Claims for Punitive Damages (Docket Entry # 92) is **GRANTED**.

3.     Defendants' Pre-trial Motion in Limine to Exclude the Testimony of Carol Gordon, etc. (Docket Entry # 93) is **DENIED**.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.